JUDGE PRYOR
delivered the opinion op the court.
George ~W. Broaddus died in the county of Madison on the 31st of August, 1871, leaving a paper purporting to be his last will and testament, made and published on the 14th of June, 1870. He had been twice married, leaving surviving him six children by his first and five by his last wife. This paper was offered for probate in the Madison County Court by his widow, *302 Cynthia Broaddus, and her five children; and upon the hearing their motion to probate was denied, from which an appeal was taken to the circuit court of the same county, resulting in a verdict and judgment rejecting the paper as his last will and testament.
The will was assailed in the court below on two grounds— first, the want of capacity on the part of the testator to execute such a paper; second, the exercise of an improper and undue influence of the wife over the testator in procuring its execution.
The testator at the time of his death was about sixty-six years of age, and had been for many years an influential and prominent minister of the Baptist Church. He was well and favorably known in the county of Madison, where he died, and his intimate personal friends all concur in the statement that he was a man of excellent, if not superior, intellect, and possessed of a character evidencing an inflexible and determined will. His capacity for transacting all the ordinary business transactions of life is not controverted by a single witness, and his alleged imbecility of mind is in no manner established by those who are attempting to invalidate his will. He preached many of his best sermons a short time prior to his death, and in his daily intercourse with his neighbors and friends gave no evidence of any such decline in mental vigor as would incapacitate him from making a valid disposition of his estate.
It is insisted, however, by the contestants of this paper that the exercise of an improper influence by his wife over the testator caused its execution; that it was made and published in order to rid himself of the constant importunities of the wife as to the disposition he should make of his estate.
It is evident from the proof that the wife was desirous of having the remnant of the testator’s estate secured to her children, the offspring-of the second marriage; but her importuni *303 ties were far from being such as to compel the testator to make such a disposition of his estate as indicated either a want of capacity or such an influence over him by the wife as deprived him of the power to act in accordance with his own wishes when considering the claims of all his children upon him.
His children by his first wife were very hostile to his last wife, and she in return made but little effort to conciliate or reconcile the unpleasant differences that existed between them, and, from the proof on this subject, the cause of these troubles originated as much from the one as the other. Those of the neighbors identified by association and relationship with the children by the former marriage detail facts showing that the testator was made unhappy by reason of the conduct of his wife toward these children; while, on the other hand, many of his nearest neighbors and most intimate friends, who were not only entitled to receive but had his confidence, give statements made by the testator himself when not in the presence of his wife or influenced by her, so far as the record shows, to the effect that his first children had treated his wife badly, and were the cause of the many troubles in the family; and while the blame no doubt, from the whole proof, may be attached, as is usual in such cases, to both parties, incidents connected with this unfriendly relation throw but little light upon the question of the alleged undue influence of the wife over the husband.
The only positive proof of the importunities of the wife in regard to the disposition to be made of the testator’s estate comes from a witness who seems to have heard on two occasions at night (being in an adjoining room), through a partition-wall, the wife urging the husband to make such a paper and the latter begging to be let alone. This sa,me witness seems to have been advising the testator that his wife was trying to get from him his estate, and to widen tire breach, if possible, that then existed between members of this *304 family. His statements come in such a questionable shape as entitle them to but little consideration, and, if true, make out no case of the exercise of any undue influence.
There is no proof in the case authorizing the conclusion that the influence of the wife was such as amounted to coercion or force, or destroyed the power of the testator to act in accordance with his own purposes in the disposition of his property, and certainly nothing in the record conducing to show that any improper influence was operating upon the mind of the testator at the time he executed this paper; but, on the contrary, the facts developed establish that the testator at the time was not only of sound mind and uninfluenced by any one, but did in fact make a judicious and rational disposition of his whole estate.
In the year 1865 he executed a will similar in nearly all of its provisions, giving to the children by his last wife the bulk of his estate. The present paper Avas drafted by his attorney in the toAvn of Richmond, several miles distant from testator’s residence, dictated in whole by the testator, and witnessed by two laAvyers of the same town at his instance; all of Avhom, including the draftsman, testify that he was competent to execute such a paper and to understand and comprehend fully what he Avas doing at the time of its execution.
His children by his first wife had all been raised and educated; all but two of them had received from him advancements, and the most of them Avere prosperous in life; while some of his last children were quite young, all under age, uneducated, and with but little if any means except what property he had to give them. His estate was valued at about twenty thousand dollars, with an indebtedness of twelve or thirteen thousand, leaving about eight thousand dollars to be divided between these last children, from which, after deducting the value of the widow’s dower or her life-estate, they would not receive each more than twelve hundred dollars.
*305 Under these circumstances this paper was executed in accordance with a fixed purpose and by a testator whose intellect was unimpaired and uncontrolled by any such influences as induced him to execute it against his own wishes. The weight of the evidence not only sustains the validity of the will, but the preponderance of the evidence on that side of the issue is so great that no verdict on the facts of this record ought to be sustained rejecting it.
The court instructed the jury, at the instance of the contestants, “that gross inequalities in the provisions of a will, where no reason for it is suggested in the will or otherwise, requires satisfactory evidence that it was the full and deliberate offspring of a rational, self-poised, and dearly disposing mind.”
The statement of such an abstract proposition might be unobjectionable in an argument upon the facts of a particular case; but to embody it in an instruction as a principle by which a jury is to be governed in determining the question of mental capacity is misleading and calculated to divert the minds of the jury from that issue to that of the inequality of the various devises between the objects of the testator’s bounty. If unequal, the jury are told it must appear that the testator had a rational and dearly disposing mind. The question of reasonable doubt must necessarily be involved in such a proposition, as the jury must believe not only that the testator was rational, but that he had dearly a disposing mind; and besides it assumes, impliedly at least, that such gross inequality existed.
Andrew and Thomas Broaddus, two of the children by the testator’s first wife, had received an estate from their grandfather, and but little if any thing from the testator, prior to the execution of the will or by reason of any of its provisions. Still no instruction should have been given on this isolated fact, so as to enable the jury to determine that the testator was- *306 wanting in mental capacity for the reason alone that he had made an unequal distribution of his estate between his children. The failure to make a devise to the two sons, disconnected with other facts, constituted no sufficient reason for invalidating the will. If the testator had the requisite capacity to execute the paper, he had the legal right to make such disposition of his estate as he saw proper, and the fact that he omitted to make a devise to two of his children can only be considered by the jury as a circumstance in connection with other facts bearing upon the question of the testator’s capacity to execute such a writing.
As the judgment of the court below must be reversed, it becomes necessary to determine whether this court, in considering the case, is to be controlled by the provisions of the Revised Statutes in force when the proceedings were instituted, by the General Statutes that took effect on the 1st day of December, 1873, or by the provisions of the Code of Practice.
The judgment was rendered in September, 1872, and the record filed in this court on the 9th of May, 1873. The act in regard to wills embodied in the General Statutes, if conceded to be retrospective in its operation in the present case, does not in any manner interfere with the vested rights of any of the parties to this appeal. They are each seeking by this litigation to have those rights determined, and the modification or change by the legislature as to the manner or form of the proceeding upon an appeal in this court affects the remedy only; and, as has been often adjudged, remedial statutes, instead of affecting vested rights, only afford the means of enforcing them. (4 Howard, 145; 1 Barb. 648; 6 Seld. 374; Cooley’s Constitutional Limitations, p. 288.)
The legislature, in enacting the General Statutes, evidently intended to make some change in the mode of considering or disposing of will cases in this court. By the Revised Statutes (2 Stanton, page 466, title “Wills”) this court, as. well as *307 the circuit court, in such cases was invested with the power to try both law and fact; and where a judgment of the circuit court rejecting a will was reversed, the mandate directed that court to certify the fact of reversal to the county court, with directions, if that court had also rejected the will, to admit it to probate. The General Statutes (page 138, title “Wills,” section 27) provides that “ the circuit court shall try both law and fact, unless a jury be required. The Court of Appeals shall not hear any matter of fact pertaining thereto other than such as may be certified from the circuit court; and the same, effect shall be given to the verdict of the jury in a will case as is given to the verdict of a jury in other cases.”
The words “shall try both law and fact” are omitted in the General Statutes from the clause applicable to this court, and this omission, it is insisted, must be construed as implying at least that the same proceeding must be had in this court with reference to such cases as pertains to the trial of any other civil action tried by a jury. On the other hand, it is maintained that the sections on that subject in the Revised and General Statutes are not repugnant to each other, and should be construed together.
The second section of the act adopting the General Statutes provides “that all statutes of a general nature in force when the General Statutes take effect, and which are repugnant thereto, are hereby repealed,” with certain exceptions therein designated.
If the General Statutes are intended to be merely cumulative, these two sections should be construed together, if the one is not inconsistent with the other; but the very object and purpose of the revision was to enact a system of laws in a condensed form embracing all statutory enactments of a general character; and to determine otherwise would not only defeat the legislative intent, but place these enactments in such confusion as to demand at once another revision.
*308 When a section in the Revised Statutes has been omitted in the General Statutes, or any change made, however slight, in a general law, the whole law as found in the Revised Statutes on that subject must be considered and treated as repugnant to the provisions of the General Statutes, as in construing one section of a general law the object and intention of the whole law must be considered. It never was contemplated by the revisers, 'or by the legislature in adopting these statutes, that both the old and new statutes should be considered together in determining what the law is.
The General Statutes must be regarded as containing a complete system of laws, and in so far as they treat of any general law, whether under the title of “Wills,” “Executors and Administrators,” “Plusband and Wife,” “Guardian and Ward,” etc., it must be considered and treated as all the statute law on the subject indicated by the title; and if the system is defective in any of its parts, the remedy is to be found in legislative amendments. This court can not therefore look to the Revised Statutes to supply any defect that may appear in any general law embodied in the General Statutes, except such laws as are expressly left unrepealed by subsections 1, 2, 3, and 4 of section 2, article 1, of the act to adopt the General Statutes.
Subsection 4 of section 2 provides “that the. provisions of the Codes of Practice in civil and criminal cases, so far as the same are consistent with the General Statutes,” stand unrepealed. The Code of Practice, in the second subdivision of' section 319, page 146, provides that “the circuit court and Court of Appeals shall try both law and fact” And while these words are left out of the General Statutes, and no particular mode prescribed by the latter in which appeals in will cases are to be disposed of in this court, still it is enacted that “the same effect shall be given the verdict of a jury in a will case as is given to the verdict of a jury in other civil *309 cases;” thus not only indicating an intention to alter the mode of procedure upon an appeal in a case like this, but in express terms requiring this court, in considering the issue, to attach the same importance to the verdict of the jury as in any other civil cause. That is, where a jury, under proper instructions, has rendered a verdict for or against a will, it will not be disturbed, unless palpably against the weight of the evidence.
The difficulty in reconciling the provisions of the Code with the General Statutes, and in adhering to the former practice of this court upon appeals in will cases, arises when the evidence is conflicting and such as would authorize the court to sustain the finding on either side, and when the case must be reversed by reason of erroneous instructions to the jury. The party obtaining the judgment below should not be allowed the benefit to be derived from the verdict where it may have been caused by an error of law, nor ought the adverse party be denied the right to be heard by a jury when this error has been corrected by the judgment of this court; and therefore, to carry out the manifest intention of the legislature and to make the statute. effective in such cases, upon a reversal by this court a mandate must go, awarding a new trial; and only in cases where there is no evidence to sustain the verdict will this court order the will to probate or reject it without further proceedings.
In this case the verdict is not sustained by the evidence upon either issue.
The judgment of the circuit court is therefore reversed, and cause remanded with directions to that court to certify the fact to the county court, with the mandate to admit the writing in controversy to probate as the last will and testament of George W. Broaddus, deceased.