Case 106—CONTESTED WILL—December 4.

# Zimlich, &c., v. Zimlich, &c.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. CONTESTED WILL—EVIDENCE—INSTRUCTIONS TO JURY.—In a contest of a will upon the ground of the testator's mental incapacity, or of undue influence, evidence of gross inequality in the distribution of the testator's estate among the natural objects of his bounty, is not, taken alone, competent evidence, but may be considered in connection with other evidence of testator's incapacity or of undue influence; but it is error in instructing the jury to single out such evidence, and tell the jury that they may consider it. It should go to the jury to be

considered by them as other evidence without suggestion from the court.

2. IN ORDER TO INVALIDATE A WILL upon the ground of undue influence it must appear that the testator, at the time of making the will, could not resist the alleged undue influence, and was not a free agent in the execution of the will.

3. VERDICT AGAINST WILL NOT SUPPORTED BY THE EVIDENCE.—As thirty-three witnesses who had good opportunity to judge of the testator's mental capacity swore that he was competent to make a will, while only four witnesses, whose opportunity for judging of the testator's mental condition was not so good, swore that he was not competent to make a will, a verdict against the will is so clearly against the weight of the evidence as to indicate passion or prejudice, unless the jury were misled by the instructions.

ROBERT J. ELLIOTT, J. C. HEMINGRAY, JAS. R. W. SMITH, GEORGE L. EVERBACH FOR APPELLANTS.

1. The law presumes the sanity of the testator, and the contrary must be shown by the contestants after the propounders have made out a *prima facie* case. (Milton v. Hunter, 13 Bush, 166; Singleton v. Singleton, 8 Dana, 316; Hawkins v. Grimes, 13 B. M., 268.)

2. Influence obtained by proper persuasion and argument, or by mere appeals to the affections, is not undue influence in a legal sense. (Bush, &c., v. Lisle, &c., 89 Ky., 393; Wise v. Foote, 81 Ky., 10; Lucas v. Cannon, 13 Bush, 650; Turley v. Johnson, 1 Bush, 117.)

3. If a testator has the requisite capacity to make a will he may dispose of his estate as he deems proper; and an unequal disposition is only a circumstance to be considered in connection with *other facts* bearing on the question of mental capacity. It is not proper to give it undue prominence by calling attention to it in the instructions. (Broaddus' Devisees v. Broaddus' Heirs, 10 Bush, 299.)

4. The verdict against the will is not supported by the evidence, and the court should, therefore, reverse the judgment with directions to dismiss the appeal from the order of the county court admitting the will to probate. (Bush, &c., v. Lisle, &c., 89 Ky., 393; Broaddus' Devisees v. Broaddus' Heirs, 10 Bush, 299.)

O'NEAL, JACKSON & PHELPS FOR APPELLEES.

1. The instructions are unobjectionable. No fault can be found with the definition of either testamentary capacity or undue influence.

2. The law will not presume in the face of an apparent and unexplained injustice either soundness of mind or absence of undue influence.

3. It was not error to instruct the jury that the fact of discrimination, if any, might be considered by them in reaching a conclusion.

4. The court will disregard any errors in instructions that do not affect the material rights of the parties. (Bohlsen v. Bohlsen, 5 Ky. Law Rep.)

BARNETT, MILLER & BARNETT of counsel on same side.

JUDGE BENNETT delivered the opinion of the court.

Joseph Zimlich, a resident of Jefferson county, Ken-. tucky, in October, 1885, made his will. He died in 1887. He was twice married, and left eight children by his first wife, the most of whom were grown, and two by his second wife, who were infants of tender years. His second wife also survived him. He willed to his wife during her life or widowhood the farm, containing twenty-six acres, on which he lived, remainder to six of his eight children by his first wife, and his city property to his said wife during her life or widowhood, remainder to his eight children by his first wife, and sixteen acres of land to his two children by his second wife, two acres of which he subsequently sold.

The children by the first wife successfully attacked this will upon the grounds, first, of the testator's want of testamentary capacity, and second, the undue influence of his wife.

Upon the trial of these issues four witnesses swore that the testator, in their opinion, had not capacity to make a will. On the other hand, thirty-three witnesses swore that he was mentally capable of making a will. These witnesses are, first, the attorney that wrote the will, and second, another attorney who had a business transaction with the testator after the will had been made. These witnesses testify that the testator was quite competent to make a will. Third, the testator's

banker; fourth, his tenants, who had frequent business transactions with him before, about the time of the making of the will, and after then. All swear that he was competent to make a will. Fifth, his neighbors swear to the same fact; and lastly, several of his children by his first wife swear that they saw no change in his mental faculties, but only physical decay. Now, the four witnesses that swear to the testator's incapacity give no fact or circumstance that indicates that they possessed opportunities to judge of the testator's mental capacity that the witnesses for the will did not possess. On the contrary, it is evident that the latter witnesses possessed the best opportunities to judge of that matter. Without further elaboration, it is sufficient to say that the verdict of the jury is so clearly against the weight of evidence as to indicate, if they were not misled by instruction No. 5, passion or prejudice. The question then arises, was instruction five given by the court erroneous?

Said instruction is: "That the testator, if of sound mind, and not controlled by the undue influence of others, had the right to discriminate between the objects of his bounty in such manner as he chose to do, if done by him of his own volition, and understanding at the time the effect of such discrimination between the objects of his bounty; that if the testator, in making such discrimination, showed unreasonableness or gross inequality, the jury have the right to consider that fact in connection with all the other evidence in determining whether or not the testator was, at the time of making his will, of sound mind, and not under undue influence of others."

While gross inequality of distribution between the natural objects of the testator's bounty does not of itself, or by itself, establish undue influence or the want of testamentary capacity, yet, in connection with other evidence of testamentary incapacity or undue influence, such inequality is competent evidence. But is not the singling out such evidence in an instruction misleading? It seems to us that it is. The jury are told that the test of testamentary capacity is the testator's capacity to know his heirs and relations, and the claims that they have upon his bounty, &c.; and as it is known by all that the claims of the testator's heirs, under like circumstances, upon his bounty are equal, the fact that the distribution among them was grossly unequal would be as readily considered by the jury as evidence upon the subjects of testamentary capacity or of undue influence, as any of evidence tending to establish these subjects, the only difference being that the gross inequality can only be considered in connection with other evidence of testamentary incapacity or of undue influence. This results from the fact that the testator has the legal right to dispose of his estate as he may wish, even to discard the natural objects of his bounty, and give his estate to a stranger without assigning or having any good reason for so doing whatever. This is his perfect right of alienation; and to say that the fact that he disposed of it out of the natural or usual course, thereby exercising his perfect right, was of itself evidence of a want of a disposing mind or of undue influence would virtually defeat this right. It is, therefore, taken alone, incompetent evidence of testa-

mentary incapacity or undue influence; but after the introduction of other evidence, tending to show testamentary incapacity or undue influence, the fact of gross inequality may also go to the jury to be considered by them as evidence of that fact, and it then goes to the jury as any other competent evidence upon that subject, and the force and effect of which they can see and consider as well as other competent evidence, without their attention being especially directed to it by the court, and the doing of which by the court is calculated to give the fact, in the minds of the jury, undue prominence.

When the facts or inferences therefrom all tend to illustrate any issue, it is not right for the court to single out any one of them in an instruction. It is misleading to do so. It is only when the fact put in evidence is incompetent, except for a particular purpose, that it is proper for the court to tell the jury for what purpose they may consider it. But the inference that may be drawn from the fact of gross inequality of the distribution of the testator's estate relates to the whole issue of testamentary capacity or indue influence, the bearing of which may be as readily seen and comprehended by the jury as any other fact appertaining to that issue, and to single out that fact in an instruction is misleading. (Broaddus, &c., v. Broaddus, &c., 10 Bush, 299.)

The rule as to undue influence is, that in order to invalidate a will on that account it must appear that the testator, at the time of making the will, could not resist it, and that the will was the result of that influence, and not the free agency of the testator.

(Lucas v. Cannon, 13 Bush, 650.) While there is proof that the wife was on friendly terms with the testator, and that she had that kind of influence over him that a good wife usually has over a kind and considerate husband, the proof wholly fails to establish undue influence on the testator in making the will. On the contrary, the proof establishes the fact that the testator was controlled by his own mind, and in making the will followed a fixed purpose of his own.

The judgment is reversed, and the cause is remanded with directions to grant a new trial.