## Gay, et al. v. Gay, et al.

(Decided February 11, 1919.)

### Appeal from Clark Circuit Court.

1. Wills—Inequality of Disposition of Estate.—Proof of inequality of disposition among the objects of a testator's bounty, does not invalidate a will, unless fortified by evidence, proving incompetency, of the testator, or the existence of undue influence exerted upon him.

2. Wills—Distribution of Estate.—A testator, who is mentally competent, and not controlled by undue influence of another, may dispose of his property, as he chooses, and may select between the natural objects of his bounty, or he may discard them, and dispose of his estate to other objects.

3. Wills—Dreams—Influence of.—Proof, that a testator has, in previous years, had dreams, the interpretations of which, by himself, he obeyed, will not invalidate a will made by the testator, unless it appears, that he was acting under the influence of a dream, in the testamentary act.

4. Wills—Undue Influence—Burden of Proof.—The burden of proof is upon one, who charges, that a will was the product of undue influence, and while like fraud, the one exerting it, usually does so, secretly, and surreptitiously, there must still be some evidence of it, and if there is none, the charge fails.

PENDLETON & BUSH and BENTON & DAVIS for appellants.

ALLEN & DUNCAN, BEVERLY R. JOUETT and MAURY KEMPER for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This action arose from a contest of the will of Lizzie
H. Gay, who died in Clark county, in the year, 1917.
She was a widow, about sixty-eight or sixty-nine years
of age, at the time of her death, but the evidence does
not make it appear, how long she had been a widow,
further, than fifteen or sixteen years. She was the mother
of two sons, one of whom Benjamin P. Gay, died in the
year 1905, leaving a widow, and three children. The
three children of Benjamin J. Gay, the elder of whom is
now twenty-four years of age, and the others, twenty
and seventeen, respectively, are the contestants of their
grandmother's will. The other son of the testatrix, is
Jacob D. Gay, one of the contestees. He is married, and
has a son, Jacob D. Gay, Jr., who is seven or eight years
of age, and also, one of the contestees. Jacob D. Gay,
Sr., has always made his home with the testatrix, and
Gatewood Gay, made his home with her, from the spring
of the year, 1913, until her death. His brother and sister,
have made their home with their mother, in Lexington,
Ky. The will of testatrix, was executed by her, in Lex-
ington, Ky., on the 16th day of August, 1916. A codicil
to it, altering it in a minor particular, as to the disposi-
tion of nineteen acres of land and increasing a devise to
the Kentucky Female Orphan School, from $2,500.00 to
$3,500.00, was executed, at her home, on February 6,
1917. The contestants owned, by inheritance from their
father, about 105 acres of land, of the value of $200.00
per acre, subject to the dower right of their mother.
They were, also, owners of one-half of a tract of about
four hundred and fifty acres of valuable lands; their
uncle, Jacob D. Gay, being the owner of the other undi-
vided one-half. They were the owners of very little per-
sonal property, and the testatrix had, shortly after the
death of their father, placed two valuable tracts of
land, in the hands of a trust company, with the direction,
that the proceeds be applied to the maintenance and edu-
cation of her grandchildren. After Gatewood Gay, be-
came grown, she put these lands, in his control, for the
same purpose. When the testatrix died, she was the
owner of about eighteen hundred acres of very valu-
able lands, and about thirty-one, or thirty-two thousand
dollars' worth of personal property. By her will, she de-
vised to her son, Jacob D. Gay, Sr., the home, where he
and she and Gatewood Gay lived, consisting of nearly one

hundred and sixty acres, and a sufficiency of the lands adjoining, which he might select, to make the home place consist of three hundred acres. She, also, devised to him, a tract of nineteen acres of land, in another tract. To the contestees, jointly, she devised two farms, known as the Allen and Shackelford lands. To the contestant, Elizabeth Gay, her granddaughter, she devised a tract of six or seven acres, and a house and lot, in Winchester, Ky.; to Jacob D. Gay, Jr., she devised a house and lot, in Winchester. The residue of her lands, she devised an undivided one-half to her son, Jacob D. Gay, and the other one-half to the contestants, jointly. She provided, however, that these lands, should be divided by acreage and not by value, and that the division, should be made by her son, Jacob D. Gay. Jacob D. Gay was to have a fee simple title to one-fourth of the lands devised to him, the one-fourth to be selected by him, by acreage and not by value. The other three-fourths, he was to have a life estate in, with the power to devise same by will to any of his own descendants, or to any of the contestants, but, if he should die intestate, then the lands should go to his own descendants, if any, and if none, then to the contestants, to be held and enjoyed by them, as the other lands devised to them. The lands to be received by the contestants, under the will, they, respectively, were given a life estate in them, with remainder to their children, and if none, surviving, then, to each other, or to their surviving children, and if none, then to Jacob D. Gay, and his heirs. Jacob D. Gay was made a trustee for the contestants, to receive, hold and manage the property devised to them, until they, should, respectively, become married, or thirty years of age. If Jacob D. Gay should refuse to act as trustee, then the Security Trust Company, of Lexington, was nominated as the trustee. Jacob D. Gay was nominated as executor of the will, without security, with power to divide the lands devised, in accordance with the provisions of the will, and to execute the proper deeds to the devisees, or he, if he chose, was authorized to institute suit, in the courts, to have the division made. Of her personal estate, she devised ninety shares of bank stock, worth $18,000.00, to the contestants, and to Robert Fisher and Martha Smith, each, $75.00, and the remainder, she devised to Jacob D. Gay. She, also, devised to the Female Orphan School, the sum of $3,500.00 as above stated. A few days before her death, she made a memorandum, which, however, was

never signed as a will, but the provisions of same, seem to have been carried out, by which she gave to Augustus Gay, one of the contestants, three brood mares, and to Elizabeth Gay, a sealskin coat, and certain articles of jewelry, including a diamond ring, and other small devises. A year or more previous to her death, she had given her son, Jacob D. Gay, one hundred and fifty-nine shares of bank stock, estimated to be of the value of $200.00 per share.

The three grandchildren, becoming dissatisfied with the disposition, which their grandmother had made of her property, by her will, instituted a contest, and upon a trial, in the circuit court, after the contestees proved the due execution of the will, and after hearing all the evidence offered by the contestants, touching the invalidity of the will and codicil, the court sustained a motion for a directed verdict, in favor of the contestees, and under a peremptory instruction, the jury found the will and codicil to be the last will and testament of testatrix, and the court so adjudged.

The contestants have appealed, and the only question before us, is whether there was any evidence offered, which required a submission of the cause to the jury. The contestants sought to set aside the will upon the usual grounds, of a want of testamentary capacity, in the testatrix, and that she was unduly influenced, by some other person or persons, in the execution of the will. It will not be possible, in an opinion, to recite all the circumstances offered as evidence, nor will it be profitable to discuss them, but, we will attempt to advert to the main contentions of contestants. The rule of almost universal application, and acceptation to be applied, in determining, whether a testator has testamentary capacity, is, that he must have mind and memory, to know his property and its value; to know the natural objects of his bounty and his duty to them; to make a rational survey of his property and to dispose of it, by his will, according to a fixed purpose of his own. Rasdall v. Brush, 31 R. 1138; McDonald v. McDonald, 120 Ky. 211; Woodford, etc. v. Buckner, 23 R. 627; Lancaster v. Lancaster, 27 R. 1127; Wise v. Foote, etc., 81 Ky. 10; Murphey's Extr. v. Murphey, etc., 23 R. 1460; Walls, etc. v. Walls, etc., 30 R. 948; Bradshaw v. Butler, 30 R. 1249. The proof, offered by contestants shows, that the testatrix was a woman of fine business sense and acumen; that she had, by inheritance, received eight or nine hun-

dred acres of land, much of it entailed, and that she had
so managed her affairs, that she had, at her death, be-
come the owner of a thousand acres, in addition to her
inheritance, and the personal property mentioned; that
she made her own contracts, and when necessary, reduced
them to writing, with her own hand; that she managed
and controlled all of her affairs; that she had a strong
and vigorous mind and will, and it continued vigorous
and commanding, until her death. She was afflicted with
no special physical weakness, but, about two or three
years before her death, she was compelled to undergo
a surgical operation, and after that time, remained more
closely, at her home, than formerly. It is not shown,
that in making her will or the codicil thereto, that she
consulted with any one about its terms or conditions,
nor was her son present, on either occasion, though it
appears, that she informed her son, and her eldest grand-
son as well, of certain of the provisions of the will. The
contestants state, in their testimony, that she knew all
about her property and its value; that she knew all of
her children and grandchildren well; that she could not
be controlled by any one to do what she did not desire
to do; but, they are of opinion, that she did not know, nor
appreciate her obligations to the contestants, which opin-
ion seems to be based, entirely, upon the fact, that she
did not devise as much of her property to them, as she
did to her son. The parol evidence, when applied to the
terms of the will, proves, that she gave to her son, very
much more property, than she gave to the contestants,
altogether, and it is insisted, that this amounts to a
gross inequality, among the natural objects of her bounty,
and is evidence, conducing to prove, that she did not ap-
preciate her duty to the grandchildren. That in order to
have testamentary capacity, one must have such sensi-
bilities as will enable him to know what he owes to the
natural objects of his bounty, there is no doubt, Mc-
Donald v. McDonald, 120 Ky. 211, but, mere inequality,
alone, in dispositions of property to the natural objects
of a testator's bounty, has never been held to be evidence
of a want of knowledge, of the duty of the testator to
them. A testator, if acting from his own will and is men-
tally competent, has a choice of the objects of his bounty,
and the extent to which he will bestow his bounty upon
them. Williams v. Williams, etc., 90 Ky. 28. If mentally
competent and not affected by an undue influence, he may
discard all the natural objects of his bounty, and dis-

pose of his property to others, or to other objects. Any other rule would destroy the testamentary power, and revoke the right of a testator to dispose of his property, according to his own will, a right, which is conceded to him, by all the authorities. Apparently gross inequality and unreasonableness in the disposition of property, by will, when combined with corroborating evidence of want of capacity or undue influence exerted upon the testamentary act, is entitled to influence, according to its degree, and is competent evidence as to the quality of testator's power of disposition, but, inequality of disposition, alone, does not prove anything. Walls v. Walls, etc., 99 S. W. 969; Kevil v. Kevil, 2 Bush 614; Zimlich, etc. v. Zimlich, etc., 90 Ky. 657; Lucas v. Carmen, 13 Bush, 650; Hildreth v. Hildreth, 153 Ky. 603.

It is insisted, that there was proof of want of mental capacity, and of an undue influence exerted upon the testatrix, which will fortify the evidence of inequality of disposition. The evidence, clearly shows, that the testatrix knew and appreciated her duties to the contestants. She was always kind and affectionate toward them; she made them presents, and kept them at her home, for considerable periods of time, and set apart, in the hands of a trustee, during their extreme youth, lands, the rent of which was worth $1,000.00 per year, for their maintenance; she took the contestant, Gatewood Gay, to her home for several years before her death; loaned him money, and furnished him lands to graze and cultivate, and by her will, gave him and his sister and brother, personal property, worth $18,000.00 and lands of the value of more than $100,000.00. The fact, that she saw fit to devise to her only son, who had always lived with her, much more property, than she devised to contestants, did not prove, that she lacked, either mental capacity, or that she was moved by an undue influence, when it is considered, that it was her legal right to make such a disposition. It is complained, that the testatrix placed contestants' property, into the hands of a trustee, and entailed it. She provided for a trustee until they should marry, or become thirty years of age, and there is nothing to indicate, that this was not a just disposition. She gave her reasons for this, to Gatewood Gay, and while she may have made a mistake, it was not a delusion, but founded to some extent in fact. The fact, that a testator placed the devised property, in entail, has never been considered evidence of want of capacity, but, rather the

normal attitude of those few, who are ever able to accumulate more than the necessities of a living, and who desire to control all they have, while living, and as long after death, as they can, mixed with a want of faith in the devisee to hold on to what is given him, which fear is. frequently justified.

It was proved, that more than twenty years before her death, her son, Benjamin, was afflicted with rheumatism, and that she represented, that she had a dream, in which the words, "pile on fagots" appeared, and she interpreted this to mean, that she should heat his room, with a strong fire, which she did, and he became well. After his death, in 1905, she dreamed, that he appeared to her with a bridle in his hand, and said, "wash your reins;" that she interpreted this to mean, that she should take control of the lands, which she had placed in the hands of his widow, to assist in the maintenance of her family, and put them, in the hands of a trust company, for the same purpose, which she did. In 1905, when her son, Benjamin, died, she had a dream, in which the date of the birth of her son Jacob, appeared in golden letters, and she interpreted this to mean, that she should be comforted, as she yet, had something to look forward to and live for. About 1907 or 1908, her son, Jacob, was sick in a hospital, when she had a dream, in which she washed her hands, twice, and then a third time, and they became clean, and she interpreted this to mean, that he was going to recover. In 1906 or 1907, her son, Benjamin, appeared to her in a dream, and advised her to put her tobacco crops, in the pool, which she did. In 1914, when the war, between France, Russia, England and Germany, Austria and Servia was fairly begun, she dreamed, that she saw a bear pressing against a door, and that the door fell. This, she interpreted, to mean, that the Russians were going to win the war. An alienist testified, that in his opinion, a person having dreams, such as those, and acting upon them, was insane. The hypothetical question propounded to the alienist did not contain a statement of all the facts, in regard to testatrix, of which there was some evidence, conducing to prove, and the question embraced some assumptions of which there was no proof, and for that reason, his answer, was not competent evidence, but, the cross-examination somewhat supplied the deficiencies of the question, and the answer will be treated as competent. It will be observed, that these dreams, were from ten to twenty years before

the will was made, with the exception of the one about the bear. The interpretations, which the testatrix is proved to have placed upon these dreams, are far-fetched and without any kind of reason, but, the proof fails to show, that these dreams, or any dream, had any influence or was present in the testamentary act, and so far removed from it in point of time, that it can not be inferred, that they exerted any influence upon it. It seems, that if a testator should have a dream, and should implicitly act upon its suggestion, and be controlled by it, in the making of a will, and his freedom of disposition be, thereby, destroyed, the will would not be the free and untrammeled act of the testator, but, it would be in the nature of one acting under an insane delusion and therefore invalid, but, as in this instance, there is no kind of connection between the dreams and the making of the will or the disposition of property made by it, and in addition thereto, the evidence abundantly, showing, that the testatrix, was of absolutely sound mind, and no contention to the contrary, the evidence of the dreams, does not prove anything to invalidate the will. Williams v. Williams, 23 S. W. 789; Raisen v. Raisen, 148 Ky. 116; Schildnecht v. Rompf's Ex'x, 4 S. W. 325; Coffey v. Miller, 160 Ky. 415; Purdy's Admr. v. Evans, 156 Ky. 142. The kind of insanity about which the alienist deposed, not being of a kind, which will invalidate a will, his testimony does not make the necessary evidence to entitle the case to go to the jury. As stated, in Crump v. Chenault, evidence is "something of substance and not vague, uncertain or irrelevant matter, not carrying the quality of proof, or having fitness to induce conviction." Clark v. Young, 146 Ky. 377. In other words, the scintilla rule does not mean the making of something out of nothing. Mere conjecture or suspicion, is not sufficient to constitute evidence.

It is ingeniously and ably contended, that while no circumstances in evidence, taken singly, is sufficient to amount to evidence conducing to prove, that the testatrix acted in the making of her will, under an undue influence exerted by Jacob D. Gay, or his wife or some other, that the proof of all the facts and circumstances in evidence, together, amount to evidence, from which an undue influence might be inferred. Walls v. Walls, *supra.* It will be remembered, that an undue influence sufficient to invalidate a will, must be an influence exerted over the testator, at some time or other, which continues at the

time of the testamentary act, of such potency, that the testator is constrained to do against his will, that which he would otherwise not do.  The fact, that undue influence is like fraud, usually concealed by the party exerting it, and surreptitiously applied, more often than otherwise, is not overlooked, but, there must be some evidence, that such influence was exerted and existed.  Crump v. Chenault, 154 Ky. 187; Jones v. Beckley, 173 Ky. 840; Brent v. Fleming, 165 Ky. 365; Broaddus v. Broaddus, 10 Bush, 299; Cecil Exrs. v. Auheir, 176 Ky. 198; Turley v. Johnson, 1 Bush 117; Child's Extr. v. Cartwright, 136 Ky. 505.  The mere opportunity to exert an undue influence, is not sufficient, as the party accused, may have done so, or may not have done so.  All the facts, in proof, taken together, do not make evidence tending to show an undue influence exerted upon the testatrix and that the will was the product of it, rather the contrary.

The judgment is therefore affirmed.