## Williams, et al. v. Davis, et al.

(Decided October 7, 1921.)

### Appeal from Hopkins Circuit Court.

1. Wills—Intention of Testator.—A person of sound mind and disposing memory may transmit his property by last will and testament in accordance with his own wishes and jurors will not be suffered to make for said testator a will in keeping with what might be their ideas of justice or propriety.

2. Wills—Testamentary Capacity.—Mere age and physical infirmities are not sufficient to destroy testamentary capacity, and although testator was 84 years of age, and had been suffering for a number of years with a serious ailment, to relieve which he had become an addict of the morphine habit, this, under the evidence, did not affect his mental capacity or render him incapable of making a will where it is shown that he acted upon his own judgment and in accordance with a fixed purpose long before formed of dividing his property in equal parts among his children, a purpose that was carried out in his will, with the exception that as to one child it was provided she should hold it free of any use or control of her husband, a sufficient reason being shown for such limitation.

LAFFOON & WADDILL for appellants.

COX & GRAYOT for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Thomas C. Davis died testate in March, 1918. By his will dated June 18, 1917, he devised his property in equal parts to his four children, except that the devise to his daughter, Mary Elizabeth, was for life, and in the event of her death before that of her husband it was provided that her share of the estate should go to the other three children, but if her husband's death preceded hers then her title to this one-fourth of the property became absolute and in fee.

Complaining of this limitation upon the estate devised to her, Mary Elizabeth Williams and her husband filed this suit to contest the will aforesaid. The main ground of contest is mental incapacity due, as alleged, to the excessive use of morphine by testator. There is no evidence of any undue influence.

Testator was 84 years of age at the time the will was written; he had been afflicted with Bright's disease and a serious bladder trouble for about twelve years. During the last two or three years of his life he was in the habit of taking morphine tablets to relieve his suffering. Some days he took from one to three tablets.

The case was submitted to the court below without the intervention of a jury; the will was sustained and this appeal followed.

The substance of the testimony adduced on behalf of contestants is illustrated by that of Mrs. Williams, who testified that her father was old and feeble in mind and body, a victim of the morphine habit; he took two tablets the day the will was written; he always told her he was going to treat the children alike, and the day after the will was written he said he had made a will disposing of his land but not of his personalty. He suffered most all the time from his ailments and was desirous of getting his affairs in order. His memory was bad and frequently while in conversation with members of his family he would drop off to sleep. He was childish. Because of his physical and mental condition, the latter due to the use of morphine, she did not think he had sufficient mind to know the character and nature of his estate, or to know who were the natural objects of his bounty, or to dispose of his estate according to a fixed purpose of his own. Other witnesses for contestants gave testimony to the same effect.

Witnesses for the propounders testified just to the contrary. It was admitted, however, that testator made frequent use of morphine; some say he was childish at

times; that his memory was not as good as in former years; and that he would drop off to sleep at times; take "cat-naps" as it were, due doubtless to the effects of the morphine, but that altogether his mind was clear and in their judgment he had sufficient mental capacity to make a will.

The difference of opinion of the various witnesses is easily accounted for; probably some of them had equal opportunities of knowing the truth but they saw testator at different times and under varying circumstances and conditions; some saw him under circumstances that convinced them he was fully capable of making a will, others saw him when conditions were such as satisfied them he was not so qualified.

After the due execution of a will is proven by the propounders the burden of showing the testator lacked testamentary capacity is upon contestants. A person of sound mind and disposing memory may transmit his property by last will and testament in accordance with his own wishes, and jurors are not permitted to make for him a will in keeping with their ideas of justice or propriety. Manifestly the testator in disposing of his estate as he did acted upon his own judgment and in accordance with a fixed purpose long before formed of dividing his property in equal parts among his four children. This he did as nearly as could have been done in view of his desire that his son-in-law, Jackson Williams, should not share in the distribution of his estate.

Though it is testified that the testator and his son-in-law were on good terms at the time of the former's death, it is also shown that his daughter, Mary Elizabeth, married against her father's wishes, and that about four or five years before the will was executed testator and this son-in-law, Williams, had a disagreement over some coal lands. Either of these circumstances may have been of sufficient moment in the mind of testator to have caused him to make the will as he did. It would require stronger proof than is disclosed by the record before us to show that the limitation upon the share of Mrs. Williams was due to the fact that testator's mind was so unbalanced as to destroy his testamentary capacity. Testator experienced no difficulty in giving to the attorney who wrote the will the correct and full names of all of his children, and to tell what disposition he wanted to make of his property. Said attorney and others testified that testator was in

every respect capable of making an intelligent disposition of his property. After the will was written and read over to testator he expressed satisfaction with the draft, and said it was in the exact terms he desired.

A physician who had known testator since the former was a boy, and who attended him in his last illness, while admitting that taking from one to three tablets of morphine daily would weaken one's mind says that for a man of his age, and considering his suffering and disease, he had a wonderfully good mind.

Mere age and physical infirmities are not enough to destroy testamentary capacity. This is well illustrated in Higdon's Will, 6 J. J. Marsh. 444, wherein it is said:

"It is true, that she was about 85 years old; and that all her faculties were perceptibly decayed, and her memory, especially, very much impaired. But her mind was only somewhat torpid, not unsound; the occasional langour and absence, and even apparent imbecility of her mind, were only the natural and ordinary consequences of her old age and were, in kind and degree, only such as may be expected to mark such extreme longevity as 85 years. Only benumbed with years, her mind was always rational, and when it acted, was consistent and intelligent."

As said in Cecil's Exrs. v. Anhier, 176 Ky. 198, 195 S. W. 837:

"The soundness of mind required in the execution of a will does not necessarily reach that strength of mind which will enable a man to fairly contract with another at arm's length or traffic in property and manage it advantageously, but the capacity required to render a man mentally competent to make a will exists when the testator has will, mind and memory to sufficiently understand that he is selecting the person, or persons, whom he wishes to have his property, and to know his property and the natural objects of his bounty, and his duty to them, and to the persons upon whom this property is bestowed by the testamentary paper, which he signs, and to make such disposition in accordance with a then settled purpose of his own."

That testator's mental capacity fully met the test as established in the foregoing opinion finds abundant support in the evidence.

In cases like this great weight is and should always be given to the verdict of a properly instructed jury,

and this is true here, as the judgment of the court (a jury having been waived) will be given the same effect as a jury verdict.

The preponderance of the evidence, if anything, favors the propounders. Certainly the evidence on behalf of contestants is not such as to warrant or justify us in reversing a judgment sustaining the will.

In the following cases will be found facts similar to those presented in this record and which support the conclusion reached herein: Wise v. Foote, 81 Ky. 10; Childress' Exr. v. Cartwright, etc. 136 Ky. 498, 124 S. W. 802; Campbell, etc. v. Adkins, etc., 160 Ky. 513, 169 S. W. 996; Schrodt's Exr., etc. v. Schrodt, etc., 181 Ky. 174, 203 S. W. 1051; Bailey's Admr v. Bailey, 184 Ky.455, 212 S. W. 595.

Counsel complains of error of the lower court in permitting a husband and wife, both contestees, to testify in behalf of the propounders, but the testimony objected to could not have had any controlling effect upon the judgment, besides there was ample proof aside from this evidence to sustain the judgment.

The judgment is accordingly affirmed.