## Rumpf's Administrator, et al. v. Schwartz, et al.

(Decided May 7, 1926.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

Wills—Evidence on Question of Mental Incapacity Held Sufficient to go to Jury, and to Sustain Verdict for Contestants.—Evidence, in contest over will, written within 48 hours of testatrix's death,

held sufficient to take case to jury on question of her mental capacity, and to sustain verdict for contestants.

JAMES W. GARRISON and EUGENE HUBBARD for appellants.

FRED FORCHT for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

A paper purporting to be the will of Edith Rumpf, was successfully contested, and the propounders have appealed. Mrs. Rumpf was a widow. She had no children; her parents were dead, and her next of kin were her sisters, Mrs. Schwartz, Mrs. Bischof, Mrs. Fleischer, Mrs. LaVake, and two brothers, Fred and John Borsch, the last named being only a half-brother. The paper is as follows:

"Louisville, Ky., Feb. 1, 1924, 3:40 a. m.

"To those concerned:

"All real estate is to be divided into equal portions among Mrs. Lena K. LaVake, John Borsch and Walter LaVake. The following are to receive $5.00 each: Fred Borsch, Mrs. Anna Schwartz, Mrs. Amelia Fleischer, Mrs. Barbara Bischof.

"EDITH RUMPF."

Mrs. Rumpf died within forty-eight hours after this paper was written. There is but one question presented by this record, and that is, was the evidence on behalf of the contestants sufficient to take the case to the jury, and to sustain the verdict?

Mrs. Rumpf was fifty-four years of age. She had light hair, light complexion, was frail and anaemic. She died as the result of a strangulated femoral hernia. She became ill on Monday, January 21. The evidence of a physician who attended her was that the locking of the bowels by the hernia prevented any passage of the bowel content; a greater burden was thus cast upon her kidneys; she became uremic, and when he last saw her on Thursday, the 31st, she was in a semiconscious, semicomatose condition; that she was perhaps able to recognize the faces of her relatives, just as a child is able to recognize a face; but was unable to transact any business, and was steadily growing worse, due to toxins absorbed as a result of the stoppage of the bowels. She was unable

to retain anything upon her stomach after she was taken ill, and had from vomiting and loss of nourishment, lost a great deal of strength.

Another physician who attended her said that she had been in this condition for three weeks; that gangrene had set in, causing a toxic condition; that she had a very high pulse, subnormal temperature; was uremic, and was pasing but little urine; that when the secretion of urine is lessened, whatever the amount is less than normal is bound to go through the system, thus making the patient sick; that he was present at the operation, and that from four to eight inches of her bowels had so rotted and disintegrated that it was shredded and pulled to pieces. The physician who operated upon her a few hours after this paper was written, testified that the tissues of her leg were soft, the skin red, and those tissues were macerating; that the retention of the bowel content for two or three weeks would decidedly affect the general system; that the reabsorption of the intestinal material makes the patient ill, toxic and dizzy, and that as these tissues became rotten and liquefied in the process of absorption, it produced a state of languor, weakness, and general ''achiness'' all over the body. The evidence of one of the witnesses to the will is that Mrs. Rumpf's mouth was parched from fever, and was open; that she talked with great difficulty; and in her evidence she said: ''Mrs. Rumpf was weak and I think one of them leaned over her bed and she told her what to say.''

An aunt of Mrs. Rumpf, who was nursing her a portion of the time during this illness, testified that there were some powders left by the doctor to be given to the patient, and that one time, when she gave her the powder into her hand, instead of putting it in her mouth, she rubbed it on her leg; that she asked her why she did this, but the patient did not give her any answer; that Mrs. Rumpf appeared to be in a sort of daze, and made gestures with her hands. When the witness asked her what she was doing, she said: ''Nothing.''

Mrs. Schwartz testified that when she saw her on Monday, the 28th, she was very weak and unable to carry on any conversation; that her tongue was so thick that she could not speak, and could not close her mouth. Mrs. Fleischer testified that when she saw her just a few minutes before the will was written, she and Mrs. Bischof spoke to her; that she looked up and stared at the witness, but did not recognize her. Mrs. Bischof said that

Mrs. Rumpf would sometimes look as if she recognized her, and then again she would not. She said she was unable to carry on a conversation of any kind. The Rev. P. F. Haussman, a minister of the Evangelical Church, was called to attend Mrs. Rumpf about two hours after the will was written. He came for the purpose of giving her Communion, and was desirous of learning whether or not she was conscious. He said he asked her if she desired the Sacrament, but he does not recall whether she was able to speak or not, but she nodded her head. He said she seemed to be in a semiconscious condition, but he thought she had the requisite consciousness to receive the Sacrament. When asked if she had mental capacity to know what estate she had, of what it consisted, its nature and value, and those who had claims upon her, and to dispose of her property according to a fixed purpose of her own, he said: "I do not think so."

Her brother, Fred Borsch, who saw her about twelve hours before the will was written, said she was unable to carry on a conversation at all, and that while he was there she sometimes seemed to recognize him and at other times did not.

Mr. Ash, who lived next door, and who had seen her every day during her illness, said that when she was taken to the hospital about three hours before the will was written, she did not recognize him. Mr. Rakutt, who lived in the house with Mrs. Rumpf, said that after Wednesday, January 30th, she was unable to talk and could hardly recognize any one. The nurse who attended her at the hospital said she had no conversation with her.

Of course, there was evidence to contradict all of this, but this was enough to make this a question to be determined by the jury. It was submitted to the jury under instructions of which there is no complaint. The jury found against the paper.

The judgment is affirmed.