## Hagedorn et al. v. Scott et al.

(Decided March 19, 1929.)

FIELD McLEOD and A. B. CHANDLER for appellants.

H. A. SCHOBERTH and WILL D. JESSE for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This record presents the history of a will contest which terminated in a rejection of the will by the verdict of a properly instructed jury. The result is challenged by the propounders of the will on the ground that the evidence was insufficient to carry the case to the jury, and inadequate to sustain its verdict. The sole issue at the trial was the testamentary capacity of Ally Mountjoy, and the contentions on this appeal require an examination of the evidence adduced, which must be tested by the rules governing the subject announced and applied by the opinions of this court in kindred cases.

The parties are agreed that, in order to make a valid will, the testator must possess mind and memory sufficient to know the natural objects of his bounty, to appre-

ciate his obligations to them, to know the nature, extent, and relative value of his estate, to take a rational survey thereof, and to dispose of it according to a fixed purpose of his own. Gay v. Gay, 183 Ky. 241, 209 S. W. 11; Langford's Ex'r v. Miles, 189 Ky. 523, 225 S. W. 246; Cecil v. Anheir, 176 Ky. 198, 195 S. W. 837; Williams v. Davis, 192 Ky. 433, 233 S. W. 886; Broyles v. Able, Jr., 208 Ky. 672, 271 S. W. 1040.

They are likewise in accord that the mere opinions of nonexpert witnesses are insufficient to constitute a scintilla of evidence of incapacity, but such opinions, when supported by facts and circumstances which afford substantial basis upon which to rest them, are adequate to sustain a verdict rejecting a will on that ground. Thompson v. Jordon, 222 Ky. 788, 2 S. W. (2d) 640; Young v. Toliver, 214 Ky. 773, 284 S. W. 389; Frazie v. Frazie, 186 Ky. 613, 217 S. W. 668; Schrodt v. Schrodt, 181 Ky. 174, 203 S. W. 1051; Hildredth v. Hildredth, 153 Ky. 603, 156 S. W. 144.

But they disagree radically in their respective interpretations of the effect of the evidence. The appellant contends that it was the will, and not the capacity of the testator, upon which the jury passed the condemnatory judgment, and that the verdict rests solely upon the opinions of untutored laymen, unsupported by any facts or circumstances of probative value. On the other hand, the appellees, with equal certitude, insist that the opinions of witnesses to the effect that testator did not possess the requisite capacity to make a will are amply supported by substantial facts which are shown to buttress the opinions that the witnesses entertained and expressed. We are thus brought to a consideration of the facts appearing in the record.

Ally Mountjoy was a bachelor, and died at the age of 54 years. He was survived by his two sisters and by the two children of a deceased younger brother. His relations with his family were always friendly, and, so far as appears in the record, he entertained equal affection for all of them. His property consisted of real estate of the value of about $6,000, all of which had come to him by inheritance from his mother, or had been acquired by him through reinvestments of money derived by descent. By the will in contest, he devised all of his property to one sister, Mrs. Hagedorn. No provision was made for the other sister, or for his niece, who was 15, or for his

nephew, who was 12, years old. The will was made September 24, 1926, and Mountjoy died on January 11, 1927.

Testator had made his home for nearly seven years with Mrs. Hagedorn, who lived in a house in Versailles belonging to her brother. He paid no board, but allowed her to retain the rents collected by her for the upstairs apartment and for other rooms not used by the family. Before removal to Versailles, he had lived with his other sister for over seven years and helped pay the living expenses. He had a paralytic stroke in 1914, became helpless, and Mrs. Scott waited upon him. He was unable to control his natural functions, and the burden of caring for him was not only exacting but repulsive. After the use of his arms returned, he would jerk the rubber bed pan away and soil the bedding. He had been afflicted with syphilis, and no one could be employed to do his washing. Mrs. Scott had to do that, and she manifested praiseworthy devotion and loyalty to her afflicted and helpless brother. His obligation to her was very great, and, in view of his expressions of appreciation on one occasion, it is very difficult to reconcile his action in disinheriting her thereafter, especially when his whole property was ancestral. He had fallen from a horse when about 14 years old, which had affected his mind. He had a blood clot on the brain, and was delirious, and had to be quieted with opiates. Two severe strokes of paralysis rendered him practically helpless, and, after his partial recovery, he went about in a wheel chair for several years. His memory was not good. He had a delusion that a living aunt was dead, and would not listen to a letter that had been received from her. He would cry hysterically, and his nerves were deranged, making him shaky and flighty. There was testimony that he did not recognize persons well known to him, and on some occasions he would appear friendly with acquaintances to whom at other times he would not speak. His conversation lacked coherence, and he had a wild and staring expression in his eyes. Several witnesses described him as having the mind of a child. He had expressed a purpose at one time of leaving all his property to his niece, and at other times indicated that he intended to leave it to Mrs. Scott. He once evidenced a desire to leave the home to Mrs. Hagedorn, but declared indifference as to what became of the residue. On another occasion he said he was

going to leave it to all of his family without discrimination.

Numerous witnesses, after extended and frequent observations of his conduct and conversation, testified to opinions that he did not possess sufficient capacity to make a will. The reasons given for these opinions were variant, and some of them trivial, but the cumulative effect of all the facts proven was such as to preclude us from holding that there was no substantial evidence to sustain the verdict. The Lilliputians were able by an abundance of frail threads to bind the giant and render him helpless. The seven sticks separately were easily breakable, but, when combined, they were capable of great resistance. The facts may not be taken apart and weighed separately, but the resultant strength of the whole may be considered by the jury, and must be taken into the account by us. Cf. Sheeran v. Jarboe, 190 Ky. 840, 229 S. W. 111.

The propounders met the case for contestants with similar evidence of exactly opposite tendency. A number of intimate friends expressed the belief that Mountjoy possessed ample capacity to make a will. Incidents tending to confirm that view were given, and explanation was made of the damaging facts proven for the other side. He carried on his business transactions with apparent care and with at least ordinary ability. His pastor said his mind was clear as a bell. His father, who died in 1924, made him sole executor of his will without requiring any bond. But it is not shown that any great responsibility was thus reposed, or that the confidence and judgment of the father so manifested was entitled to any great weight. The father was past 80 years of age and apparently made the will in extremis a few days before his death. The most that can be deduced from the voluminous evidence for and against the main fact in issue is that it afforded an irreconcilable conflict of evidence which the jury was the proper tribunal to try. Fitzgerald v. Fitzgerald, 201 Ky. 813, 258 S. W. 681; Carter v. Carter, 216 Ky. 732, 288 S. W. 666; Franzman v. Nalty, 208 Ky. 686, 271 S. W. 1034.

Mere inequality, or downright discrimination among relatives equally deserving, is not of itself sufficient grounds for striking down a will; but, when coupled with other evidence indicating a lack of some of the essential

elements of testamentary capacity, it may afford adequate basis for a verdict against the will. McDonald v. McDonald, 120 Ky. 217, 85 S. W. 1084, 27 Ky. Law Rep. 607, 117 Am. St. Rep. 579; Meuth v. Meuth, 157 Ky. 784, 164 S. W. 63; Zimlich v. Zimlich, 90 Ky. 657, 14 S. W. 837, 12 Ky. Law Rep. 589; Frye's Ex'r v. Bennett, 189 Ky. 546, 225 S. W. 499.

In view of the pathetic affliction of the testator, his physical suffering, the preying characteristics of the disease he had, the opinions of so many of his intimate friends and acquaintances, the limited amount of business transacted by him, the sharp conflict in the evidence upon his mental capacity, and the absence of any reasonable explanation of his act in disinheriting the orphan children of his only brother and his sister, to whom he owed at least as much as he did to the other (Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948), we are unable to say that the verdict was not sustained by any rational view of the facts. The issue of testamentary capacity is one of fact, which must be tried by a jury, when the evidence is contradictory, and any doubts we may entertain in this case are resolved in favor of upholding the verdict by the concurrence of the able circuit judge, who saw the witnesses, heard the evidence, and approved the result reached when he denied the motion for a new trial. Lischy v. Schrader, 104 Ky. 657, 47 S. W. 611, 20 Ky. Law Rep. 843; Central Trust Co. v. Bennett, 208 Ky. 281, 270 S. W. 821; Wood v. Corcoran, 190 Ky. 621, 228 S. W. 32; Berry v. Moore, 220 Ky. 619, 295 S. W. 885; White v. Cherry, 220 Ky. 664, 2 S. W. (2d) 1060; Doyle v. Schafer (Ky.) 14 S. W. (2d) 413, decided February 19, 1929.

The statute (sec. 4850) requires that the same effect shall be given to the verdict of a jury in a will case as is given to the verdict of a jury in other civil cases, and it is the established rule that the verdict of a properly instructed jury will not be overturned when it is not flagrantly and palpably against the evidence. Snyder v. Hudson, 223 Ky. 525, 4 S. W. (2d) 410; Rounds v. Rounds, 214 Ky. 294, 283 S. W. 77; Rumpf's Adm'r v. Schwartz, 214 Ky. 350, 283 S. W. 102; Farmers' & M. Bank v. Wisdom, 226 Ky. 179, 10 S. W. (2d) 846.

The judgment is affirmed.