*In re* WALZ'S ESTATE.

1. WILLS—MENTAL COMPETENCY—ADDICTION TO THE USE OF DRUGS —EFFECT AT TIME OF MAKING WILL.

    Testimony that testatrix was addicted to the use of drugs and intoxicating liquors and at times was subject to hallucinations by reason thereof, *held*, insufficient to establish her incapacity to make a will, in the absence of testimony of mental incompetency at the very time of the making of said will.

2. SAME—EVIDENCE—TESTIMONY NEGATIVED BY WILL ITSELF RAISES NO QUESTION FOR JURY.

    Testimony of witnesses for contestants that, in their judgment, testatrix was not mentally competent to make and execute the will in question, that she did not know the nature and extent of her property, and that she made exaggerated statements as to the nature and extent of her property, *held*, to present no question for the jury, in view of the fact that she dictated her own will, and such will itself negatives completely all such testimony.

3. SAME—MENTAL COMPETENCY—"DRUG FIEND"—ABILITY TO DO BUSINESS.

    It was not error for the court to refuse to send to the jury the question of whether the use of drugs by testatrix

    The question as to what constitutes capacity or incapacity to make a will, is discussed in notes in 27 L. R. A. (N. S.) 2; L. R. A. 1915A 444.

    On morphinism and other addictions as affecting responsibility and capacity to make a will, see note in 39 L. R. A. 262.

had so destroyed or weakened her mental powers as to render her incapable of making testamentary disposition of the property she accumulated through business acumen during the very period it is alleged she was a "drug fiend," and, therefore, an incompetent person.

4. SAME—PRESUMPTION OF COMPETENCY—BURDEN OF PROOF UPON CONTESTANTS.

The mental competency of testatrix to make the will is presumed, and the burden of showing want of capacity was upon contestants.

5. SAME—EVIDENCE—EXAMINATION OF ADMINISTRATOR.

The trial court was not in error in declining to allow contestants to examine the administrator with reference to the inventory of the estate in an endeavor to show that testatrix's statements as to ownership of bonds and other property were unfounded.

6. SAME—EVIDENCE—SUFFICIENCY—DIRECTED VERDICT.

Testimony for contestants, *held*, insufficient to go to the jury, and a verdict for proponents was properly directed.

Error to Wayne; Codd (George P.), J.   Submitted April 21, 1921.   (Docket No. 65.)   Decided July 19, 1921.

Fred Van Every presented for probate the last will of Gem Walz, deceased.   The will was allowed in the probate court, and Rue Van Every and others appealed to the circuit court.   Judgment for proponent on a directed verdict.   Contestants bring error.   Affirmed.

*Campbell, Dewey & Stanton* (*Andrew L. Moore,* of counsel), for appellants.

*Stellwagen, MacKay & Wade,* for appellee.

WIEST, J.   The will of Gem Walz was admitted to probate in the probate court for the county of Wayne on the 12th day of June, 1919, upon the petition of Fred Van Every, a brother of the testatrix.   Thereafter and on July 1, 1919, Rue and Nye Van Every,

brothers of the testatrix, and Rosemond Tibbits, a sister, gave notice of an appeal to the circuit court for the county of Wayne and of contest of the will on the grounds:

"*First.* Because the instrument in question is not the last will and testament of the said Gem Walz, deceased, and was not duly executed according to law.

"*Second.* Because at the time of the alleged execution of said instrument, to-wit, on the 25th day of January, 1919, the said Gem Walz was not mentally competent to make and execute said purported last will and testament.

"*Third.* Because at the time said will is said to have been executed, January 25, 1919, the said Gem Walz was insane and not of sound and disposing mind and memory and not mentally competent to make and execute a last will and testament.

"*Fourth.* Because on the 25th day of January, 1919, and for a period of over twenty-five years prior thereto, the said Gem Walz was a drug fiend and had been addicted to the use of drugs and liquors in an excessive amount and previous to that time she had taken the so-called drug cure on at least three different occasions and that her mind had become so affected by the prolonged and excessive use of drugs and liquors that she was not mentally competent to make said will or to make any will and that she was in truth and in fact mentally incompetent and had been mentally incompetent for some years.

"*Fifth.* Because said will was procured by undue influence and fraud."

At the trial in the circuit the court directed a verdict sustaining the will. The case is brought here by contestants, and counsel for them state in their brief:

"While several reasons were assigned as to why the will should not be admitted to probate, the trial of the case narrows the issue down to the single question as to whether or not, at the time the will was executed, the deceased was possessed of sufficient mental capacity to know the nature and extent of her property, the natural objects of her bounty and to keep these

things in mind, without prompting, sufficiently long to plan and execute the will in question."

The terms of the will and the undisputed testimony showing the circumstances under which it was executed meet all the requirements mentioned and establish mental competency at that time on the part of testatrix. On January 25, 1919, Mrs. Walz asked one of her roomers who had a typewriter in his room to write her will, and he did so on the typewriter just as she dictated it without prompting, and she then called in other roomers and signed the will in their presence. The will she so dictated and signed reads:

### "MY LAST WILL.

"In the presence of Leonard H. Gesquierre, Mrs. June Nugent and Mrs. George Moore, the undersigned, I, Mrs. Gem Walz, being of right mind, make my last will:

"To my nephew Nye Humphrey, I leave Five Hundred Dollars ($500.00), to be paid to him at the rate of Five Dollars ($5.00) per week; to Lawrence Van Every, I leave Two Hundred and Fifty Dollars ($250.00), to be paid at the age of 30 years; to Dorothy Van Every, I leave Two Hundred and Fifty Dollars ($250.00), to be paid to her at the age of 21 years, Mr. Fred Van Every, my brother, to act as guardian and administrator for the above heirs.

"To my friend, Mrs. June Nugent, I leave Fifty Dollars ($50.00), also, while manager of my rooming house, I leave her as wages Ten Dollars ($10.00) per week, starting from Monday, January 20, 1919, this is in addition to her board and room.

"I value my furniture, etc., and 'good will' of my rooming house at Three Thousand Five Hundred Dollars ($3,500), and that and all other belongings to go to my brother, Mr. Fred Van Every.

"My sister, Mrs. Tibbits, to arrange for my burial, said burial to be paid out of my insurance, after which the remainder I leave to her. I do not wish to have any flowers at my funeral.

"Made and witnessed this 25th day of January,

1919, at the place of my residence, 104 Henry street, Detroit. Michigan.

"GEM WALZ.

"LEONARD H. GESQUIERRE,
"JUNE NUGENT,
"HAZEL MOORE,
"ALEXANDER CAMPAU."

We might stop here and affirm the action of the court below on the authority of *Spratt* v. *Spratt*, 76 Mich. 384, there being no evidence of undue influence or fraud, and the evidence establishing the fact that the instrument was executed according to law. In the *Spratt Case* this court held:

"Now when, in the absence of fraud or undue influence, it is shown that the testator either wrote or dictated the will produced, the fact is established that he was capable, mentally and physically, of doing whatever the instrument shows was done; and the only question is, does the instrument on its face indicate that it is the emanation of an unsound mind, when applied to the facts and circumstances upon which, and under which, it was intended to operate, namely, the estate disposed of, and the manner of disposition?"

We have, however, concluded to consider the case presented by the contestants in the court below. Contestants introduced testimony to the effect that Mrs. Walz had used morphine 25 years and during the last years of her life she was in the habit of taking drugs to excess; that at times she appeared drowsy and her speech was affected; that she made exaggerated statements about her property, claiming she had six or seven rooming houses, and had a large farm at Plymouth, and one in Mexico, and that she had a big Pierce-Arrow automobile and $50,000 in Liberty bonds, and an 80-room apartment house on Cass avenue; that she claimed she had been arrested in a certain store and had been paid $8,000 in settlement; that she had taken treatment for the drug habit at

Neal Institute at Detroit, and also treatment for the same habit many years before; that she claimed she had bought a Newfoundland dog and paid $1,500 for it; that she used profane language; that she would start to talk about one thing and the next minute start off on something else, and that she was in the habit of taking large quantities of paregoric. Witnesses for contestants also expressed the opinion that she was mentally incompetent to make a will at all, but none of them brought their knowledge of her actual mental condition to the very day she made the will. The trial judge at the close of the evidence struck out of the case all testimony relative to the taking of morphine and paregoric by testatrix, stating:

"In view of the fact that there has been no medical testimony, or any expert testimony introduced in this case, showing that the taking of morphine or paregoric by the testatrix affected her mentality to such an extent as to render her incapable in law to make that will, I believe I should strike out all testimony of that kind because I cannot conceive that it is or would be your province or my province to guess or conjecture that the taking of morphine or paregoric would so affect the mentality as to render the deceased here incapable on the 25th day of January, 1919, from making a will."

Appellants insist that the testimony so introduced raised a question of fact for the jury. It was not sufficient to show that testatrix was addicted to the drug habit without showing that she was incapacitated mentally thereby in fact at the time the will was made. *In re Cochrane's Estate*, 211 Mich. 370.

Alcoholic intoxication, and exhilaration, excitement, exaggerated and erroneous ideas and stupor induced by the use of drugs are analogous and subject to the same rules with relation to their effect upon mental capacity to make a will, and so treated in the text books and reported cases. See Thompson on Wills,

§ 87, title, "Drunkards and Drug Fiends"; *Bush* v.
*Lisle*, 89 Ky. 393 (12 S. W. 762) ; 1 Alexander on
the Law of Wills, § 350.

The holding in *Miller* v. *Oestrich*, 157 Pa. 264, 272
(27 Atl. 742), is applicable to this case.   The will in
that case was contested on the ground that the testa-
trix was addicted to the use of morphia, and in a few
instances she had delusions as to seeing objects about
her that had no existence.   The court stated:

"But the inconsequence of such a mode of proving
mental unsoundness becomes at once apparent when it
is considered that only actual, real, mental un-
soundness at the time of the testamentary act
is the important subject of inquiry.   While such proof
may be useful in ascertaining the cause of actual
mental unsoundness, it is of no avail to establish its
existence, unless the other proof in the case clearly
shows that it was really present.   In other words, un-
less the theory that it ought to exist, or might exist,
be followed by proof that it actually did exist at the
important moment, the theoretical proof is of no
practical value in the contention."

The testimony of witnesses for contestants that, in
their judgment, testatrix was not mentally competent
to make and execute the will in question, and that she
did not know the nature and extent of her property
and that she was crazy, irrational, and that she made
exaggerated statements as to the nature and extent
of her property raised no question for the jury under
the undisputed fact that she dictated her own will,
and such will itself negatives completely all such testi-
mony.

Mrs. Walz accumulated all of her property during
the last five or six years of her life.   She operated
a hotel for about two years, and at the time of her
death managed a rooming house.   It would be anom-
alous, to say the least, to send to the jury the question
of whether her use of drugs had so destroyed or weak-

ened her mental powers as to render her incapable of making testamentary disposition of the property she accumulated through business acumen during the very period it is alleged she was a "drug fiend" and, therefore, an incompetent person. The mental capacity of Mrs. Walz to make the will is presumed. The burden of showing want of such capacity was upon contestants and when they showed, as they claimed, extravagant statements of wealth, imaginary ownership of rooming houses and farms and that she was drowsy and incoherent and out of her head at times, it was incumbent upon contestants to show such mental manifestations were attributable to something more permanent than the temporary effect of the drugs they claimed she was addicted to using.

At the trial counsel for contestants offered in evidence the inventory of the estate and then sought to examine the administrator with reference to the same in an endeavor to show that testatrix's statements as to the ownership of bonds and other property were unfounded, and the court declined to permit such examination. We are of the opinion that this was not prejudicial error.

Giving contestants' showing every legitimate, favorable consideration, it must be held to have fallen short of right to go to the jury, and the circuit judge very properly directed a verdict sustaining the will.

What we have said in its effect disposes of all the questions relied upon by appellants.

The judgment is affirmed, with costs.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.