## Hildreth, Executrix, et al. v. Hildreth, et al.

(Decided May 7, 1913.)

### Appeal from Nicholas Circuit Court.

1. Wills—Validity—Undue Influence—Testamentary Capacity.— While a will may be valid as to one devisee, and, on account of undue influence, invalid as to another; one portion of a will should not be rejected for want of testamentary capacity alone, while another part, written at the same time and no more plainly expressed, is admitted to probate, unless it be shown by the evidence, that the testator's mind, with respect to the subjects treated of or devisees affected by that part of the will set aside by the verdict, had been so prejudiced or unbalanced as to destroy his testamentary capacity to make that part of the will.

2. Wills—Undue Influence—Absence of Evidence of—Probate.— Where the circumstances attending the execution of a will show it to have been made by the testator after a survey of his estate, a selection of the objects of his bounty, a full knowledge of its meaning and effect and in pursuance of a fixed purpose formed and expressed before its execution, it should, in the absence of evidence showing that its execution resulted from undue influence exercised over the testator's mind and will, be admitted to probate.

3. Wills—Proof of Execution—Testamentary Capacity—Burden of Showing Want of.—After due execution of a will is proved by the propounders, the burden of showing that the testator lacked testamentary capacity, or that of showing that the will was procured by the exercise of undue influence, is upon the contestants; and, as to the latter ground of contest, it is not sufficient that it be shown that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised. Some evidence must be adduced showing that such influence was exercised.

4. Wills—Policy of Law Respecting Making of—Juries Not Permitted to Make in Accord With Their Ideas.—The law permits the owner of property, who is of sound mind and disposing memory, to transmit it by last will and testament in such manner, as pleases him, and juries are not permitted to make for him a will that accords with their ideas of justice and propriety; nor are they permitted to suspect away the right of the testator to dispose of his property in accordance with his own will and desire.

5. Wills—Appeal—Reversal—Direction to Circuit Court to Require County Court to Admit to Probate.—Where on appeal to the Court of Appeals, the record of the trial in the circuit court, shows that there was no evidence conducing to prove the want of testamentary capacity, or that the making of the will was procured by undue influence, the Court of Appeals, in reversing the judgment, will instead of ordering a new trial, direct the circuit court to require the county court to admit the will to probate.

B. S. GRANNIS, C. B. MORFORD and JNO. P. McCARTNEY for appellants.

HOLMES & ROSS, WM. CONLEY and MORGAN & DARRAGH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

A. R. Hildreth, a resident of Nicholas County, died in 1911 leaving a will in words and figures as follows:

"Wednesday, July 26th, 1911.

"I, A. R. Hildreth, of the County of Nicholas, State of Kentucky, being of sound mind and memory, do make, publish and declare this to be my last will and testament, to-wit: 1st. All my just debts and funeral expenses shall be first duly paid. 2nd. I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my beloved wife, Sally A. Hildreth, during her life. At her death, I hereby devise and order that my property, both real and personal, be sold and divided as follows: 1st. To Ella Gay and Perry C. Gay, her son, fifteen hundred dollars ($1,500), to be equally divided between them. 2nd. All the rest, residue and remainder I hereby give and bequeath to my beloved brother in the church, Rev. A. H. Miller, President Kentucky Conference Methodist Protestant Church, to be used in church work as he may think best. 3rd. I hereby nominate and appoint my wife, Sally A. Hildreth, to be the executrix of this my last will and testament, without bond, hereby revoking all former wills by me made. Lastly, I hereby testify that this instrument of writing was dictated by me in the presence of the two subscribing witnesses. In testimony whereof, I hereunto set my hand and seal this 26th day of July, 1911.

"A. R. HILDRETH."

"Signed, sealed, published and declared as and for his last will and testament by the above named testator in our presence; who have at his request and in his presence, and in the presence of each other signed our names as witnesses thereto.

C. B. STANDIFORD, Witness.

W. C. SPARKS, Witness.

The will was admitted to probate in the Nicholas County Court and the widow duly qualified as executrix. From the order probating the will the appellees, Aquilla Hildreth and William H. Hildreth, brothers of the testator, prosecuted an appeal to the Nicholas Circuit Court,

and, on the trial in that court, the jury returned a verdict sustaining the will as to the devise to the widow, but rejecting it as to the devises to Ella and Perry C. Gay and the Rev. A. H. Miller. Judgment was thereupon entered in conformity with the verdict. The executrix and devisees in remainder, being dissatisfied with so much of the verdict and judgment as rejected that part of the will containing the devises to the latter, and having failed to obtain a new trial, have appealed to this court.

The appellees, contestants in the court below, seem to have acquiesced in the verdict and judgment in so far as they sustained that part of the will devising the entire estate to the testator's widow for life; at any rate, they have not taken a cross-appeal. So, whatever may be our decision on the present appeal, it cannot affect that part of the will. In Randolph, etc., v. Lampkin, etc., 90 Ky., 551, a similar situation was presented. Contestants attempted to break a will whereby the testator devised the bulk of his estate to the widow and children of a deceased nephew, and a small parcel of land each to Lewis Washington and Jefferson Blackwell. The will, like the one here involved, was all written and executed at one time, no codicil being thereafter added. On the trial in the circuit court, the jury returned a verdict finding the instrument in question to be the testator's last will so far as it made provision for Washington and Blackwell and not his last will so far as it made provision for the widow and children of the nephew. In declaring the effect of this singular finding the court said:

"As under section 35, chapter 113, General Statutes, (now section 4859, Kentucky Statutes), the proper issue for the jury in a will contest is, 'whether or how much of any testamentary paper produced is or is not the last will of a testator,' it was competent for the jury to find the verdict rendered; and although the devisees Washington and Blackwell, as well as the contestants, are before this court as appellees, still, as there was not in the lower court, nor, by reason of the relative attitude they occupy, can be any real contest between them and appellants, the judgment must, in the absence of a cross-appeal, be treated as to them final and conclusive."

While the instructions given on the trial in the circuit court were formerly objected to, both by appellants and appellees, and were complained of by the appellants in the motion and grounds for a new trial, it is not now

claimed by the latter that they were not substantially correct, but they insist that so much of the verdict as set aside that part of the will containing the devises to the remainder men, was contrary to and unsupported by the evidence, for which reason the jury should have been peremptorily instructed to find that the entire paper was the last will and testament of the testator. If this contention is sustained by the record it will be unnecessary to consider other errors assigned for a reversal. So, the questions first presented for consideration are: Was the testator mentally competent to make that part of his will now in controversy? Was the making of that part of the instrument procured by undue influence exercised over the mind and will of the testator?

It is difficult to understand how one part of the will could be rejected for want of testamentary capacity on the part of the testator, and another part of it, made at the same time and no more plainly expressed, be admitted to probate. If it had been shown by the evidence that the testator's mind, with respect to the subjects treated of or devisees affected by that part of the will set aside by the verdict of the jury, had been prejudiced or was unbalanced, it might afford some explanation of the verdict, but no such evidence being furnished by the record, it must, at least, be presumed that if the testator was competent to make a part of the will, he was competent to make all of it.

It should also be presumed that if no undue influence was exercised over the testator to induce him to make that part of the will containing the devise to his wife, there was none to induce him to make that part of it containing the devises to the Gays and Miller. Our analysis of the evidence found in the record convinces us that the verdict, in so far as it set aside that part of the will affecting the remaindermen, was unauthorized. There was no evidence showing the testator lacked testamentary capacity. His education was limited to ability to read and write and he was somewhat eccentric, but possessed sufficient mind to take care of his estate and property and transact whatever business appertained to the occupation of farming. He had been admitted to the ministry of the Methodist Protestant Church, and was, at times, a religious enthusiast, but never a person of unsound or even unbalanced mind.

According to the evidence, his ill health, resulting from tuberculosis, though continued through several

months before his death, did not impair his mind or will power.

The contestants and one or two witnesses introduced in their behalf, testified that, in their opinion, the testator was not competent to make a will. On the other hand, a greater number of witnesses, testifying for the propounders, expressed the opinion that he was competent, and the evidence as to his life and conduct was of far greater value in establishing his testamentary capacity than the mere opinions of witnesses. Besides, the circumstances attending the making of the will proved it to have been made after a survey by the testator of his entire estate, a selection of the objects of his bounty, with a full understanding of its meaning and effect, and in pursuance of a fixed purpose formed and expressed twenty years before its execution. In addition, it cannot be denied that the will makes a rational disposition of the testator's estate. It manifests, first, his solicitude for the wife whose affection and frugality through the long years of their married life, had contributed to his happiness and the enlargement of his estate; second, his purpose to reward the two faithful servants whose ministrations had added to his and his wife's comfort and would continue in her behalf after his death; third, his purpose to make an offering to the church whose consolations he had received and in whose ministry he had served. The record also fails to furnish any evidence of undue influence. No witness ever heard the wife mention the making of a will to the husband; but it is insisted for appellees that as she wrote Sparks, a near neighbor and the draftsman of the will, the testator desired him to call and attend to some business for him; and later sent for Standiford, one of the subscribing witnesses to the will, that these acts, by implication, constitute proof of undue influence exercised by the wife over the mind of the testator resulting in the execution of the will.

The facts justify no such inference; both Standiford and Sparks testified that when they arrived at the residence of the testator he informed them he had directed his wife to request their presence, and that he wished Sparks to write his will and he and Standiford to witness it. Sparks arrived ahead of Standiford and, after receiving directions from the testator as to what the will should contain, went into an adjoining room where there was a table upon which to write the will and there prepared it as the testator had directed. While he was

writing the will Standiford sat in the room with the testator and, when the will was completed, it was read by Sparks to the testator, who then took it in his hands and read it himself, following which it was signed first by him and then, at his request, by the two subscribing witnesses in his presence and in the presence of each other. While reading the will the testator remarked that it would have been well to put in it a provision requiring Ella and Perry Gay to remain with his wife as long as she lived, but added that it was unnecessary that this be done as they would remain with her anyhow.

According to the further testimony of both Sparks and Standiford, the testator's wife was not present while the will was being prepared or when it was executed, nor was she, at any time, in the room with Sparks while he was writing it. They also testified that she had nothing to say about the will and asked no questions before or after its execution.

It also appears from the testimony of numerous witnesses that the testator said twenty years before his death that he had made up his mind years before to dispose of his estate as was done by the will, which conclusion he, at that time, communicated to his wife and steadfastly adhered to until the will was executed. The wife, when informed how he would make the will, acquiesced in the contemplated disposition of his estate and made no attempt then or later to change his mind. The only evidence relied on by appellee as conducing to prove the wife's influence over the testator was a statement made by her on a single occasion to a tenant that she wanted crops other than tobacco and watermelons grown on ground the latter had rented of the testator for the cultivation of watermelons and tobacco; and another statement, jocularly made during the testator's illness to keep him from leaving his bed; which statement was, in substance, that she now had him where she could manage him. There was nothing in the evidence that tended to show hers was the dominating mind, or that she ever attempted to control his actions or change his purposes about any matter or thing. It is not claimed by appellees that any of the devisees in remainder influenced the testator to make the will and one of them, Rev. A. H. Miller, had not seen him for more than a year before the will was executed.

In brief, there is no proof in the record relating to the devises in the will, showing even a suggestion on the

part of any one that the testator should make them, or any fact from which an inference can be drawn that he was influenced to make them or any of them. In disposing of his estate as he did, the testator evidently acted upon his own judgment and according to a fixed purpose long before formed, knowing his duty to his wife and his obligations to the two faithful servants and the church of which he was a minister.

There was therefore nothing unreasonable or unnatural in the provisions of the will.

The law applicable to the facts here presented is well stated in Childres Exrs. v. Cartwright, &c., 136 Ky. 498, in the opinion of which it is said:

"The rule is well settled that after due execution is proved by the propounders the burden of showing that the instrument is invalid, because procured by the exercise of undue influence, is upon the contestants. This must be shown by evidence at least tending to establish that undue influence was exercised upon the testator. It is not sufficient that it be shown that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised; some evidence must be adduced showing that such influence was exercised. The law permits the owner of property, who is of sound mind and disposing memory, to transmit his property by last will and testament in such manner as pleases him, and juries are not permitted to make for him a will that accords with their ideas of justice and propriety; nor are they permitted to suspect away the right of the testator to dispose of his property in accordance with his own will and desire."

To permit the verdict to stand in this case would be to allow the jury to dispose of the testator's property in a manner that would not accord with his intentions, which he was clearly competent to express as shown by the instrument itself. In this view of the case it is our duty, in reversing the judgment, not to direct the granting of a new trial, but to require the circuit court to set aside so much of the verdict and judgment as set aside that part of the will containing devises to the remaindermen, and by its judgment order the county court to admit the entire will to probate as the last will and testament of A. H. Hildreth, deceased. This course was in effect followed in Bush, &c. v. Lisle, 89 Ky., 402, wherein we said:

"In our opinion the evidence in this case shows clearly that F. M. Lisle had testamentary capacity, and freely, and without undue influence, executed the paper in contest, and it should be held his true last will and testament. Wherefore, the judgment must be reversed and as the verdict was not sustained by the evidence, the cause is remanded, with directions to the lower court to dismiss the appeal from the order of the county court probating and admitting to record the paper as his will." Broaddus Dev. v. Broaddus Heirs, 10 Bush 309.

For the reasons indicated the judgment of the circuit court is reversed and the cause remanded with directions to that court to certify the fact to the county court, with a mandate, directing it to admit the entire paper in controversy to probate as the last will and testament of A. R. Hildreth, deceased.