## Redeman, et al. v. Ruff, et al.

(Decided November 14, 1922.)

### Appeal from Jefferson Circuit Court (Common Pleas, First Division).

1. Wills—Mental Capacity—Evidence.—Evidence examined and held insufficient to support the contention that testatrix was mentally deficient.

2. Appeal and Error—Evidence—Reversal.—Where the verdict appears to be flagrantly against the weight of the evidence the judgment will be reversed.

FRED STARCK and SHACKELFORD MILLER, JR., Guardian ad Litem, for appellants.

W. G. DEERING and J. L. RICHARDSON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Frances Redeman on March 28, 1919, made her last will and testament. She was then past sixty years of age and in ill health. On May 2, 1919, she died survived by three daughters and three sons. Her home consisted of about ten acres of land in Jefferson county, outside of the city of Louisville and not far from a military camp. She had only a small amount of personal property, valued at not exceeding $300.00. The three daughters were married and had homes at which they and their families resided. The three boys, being younger children, were at home. Two of them were under age while the older one was, to say the least, feeble-minded. The ten-acre tract had been purchased by the husband of Frances Redeman some thirty years before her death who had it deeded to his wife; a part of the purchase money was borrowed from Carl Mann. The husband of testatrix devoted his entire time to the cultivation of the ten-acre plot, raising garden vegetables and such things as hucksters sell along the street, and in this way he made a meager living for himself and family. Being constantly engaged in his garden work and having very few clothes he always engaged Carl Mann, a very close friend, to carry his money to the bank, do what little shopping he had to do and attend to other business matters for him. This had gone along for years, and the men were very intimate. Mann was also a gardener and trader, living in the same neighborhood. The husband of testatrix was killed in a street car accident some seven or eight years before her death, and Carl Mann continued to take care of the business affairs for the family just as he had done for the husband. He paid the taxes and other little bills, collected the money from the sale of the garden products and did everything of a business nature that was to be done for the widow. She asked advise of him and received sound counsel. It was said he was a Jew, and it is intimated that he is and was a careful and prudent trader as well as a thrifty individual. Frances Redeman on the 27th of June, 1917, made and published a will by which she gave some of her property to each of her six children. At that time her property was worth very little. Perhaps her farm was worth not more than $1,000.00, and the personal property not exceeding $200.00. Her husband in his lifetime cared little for his three sons-in-law and had special

antipathy towards one of them. He frequently said to testatrix and in her presence that he did not want any of his sons-in-law to have anything from his estate, but wanted all of his property to go to the three younger children, all boys. After making her first will Frances Redeman became dissatisfied with it for some reason and she asked Carl Mann, who attended to all of her business, to have a lawyer come out and draw her will. At the time the matter was mentioned Carl Mann and Mrs. Redeman discussed the matter of how the property was to be devised, and Mrs. Redeman said that her husband had often said to her that he did not want his sons-in-law to have any of his property, and Carl Mann, concurring in that statement, told the wife that he had often heard him say the same thing. Then Carl Mann inquired of Mrs. Redeman whom she would have as attorney to draw her will, and she suggested that Mr. Doolan, whom she had engaged to draw a lease for the right of way across her property some weeks before, should draw her will also. Accordingly Carl Mann, sixty odd years of age, went to see Mr. Doolan and told him of Mrs. Redeman's request to come to her house and draw her will. For some reason Mr. Doolan was unable to go at that time and deferred the matter, but Mrs. Redeman insisted on Carl Mann obtaining a lawyer for her to draw the will, and Carl Mann went the second or third time to see Mr. Doolan and to urge him to come to the home of Mrs. Redeman to prepare the will. Finally Mr. Doolan set a day to go to the house of Mrs. Redeman to prepare the will and agreed to call by Carl Mann's house and take him to the Redeman home. It appears that when they arrived at the house there was no one there except Mrs. Redeman, who was sitting in a chair. Mr. Doolan inquired of her what she wanted and she told him she wanted him to prepare her will, and then she told him how she wanted to dispose of her property and suggested that while she wanted to give all the property to the three boys she thought it proper to give to the three daughters five ($5.00) dollars each. Mr. Mann and Mr. Doolan were both present. Mr. Mann, a friend of the family, spoke up and said that seems "too poor; give them fifty ($50.00) dollars each." Whereupon the testatrix discussed the matter with the attorney and thought about it for a few minutes while Mr. Mann was absent from the house on request of Mr. Doolan to find another witness to the will. When he

returned Mrs. Redeman told Carl Mann that she had re-considered the matter and had decided to and had given the daughters fifty dollars each instead of five. The attorney then suggested to Mrs. Redeman that she would have to have an executor because some of the children were not of age and could not convey the property or make a lease. So after some discussion she asked Mr. Doolan, her attorney, to be her executor without bond. Perhaps Carl Mann made some recommendation in regard to this. At any rate it was so written in the will.

It is the contention of the contestants of the will, who are the daughters of the deceased, that Francis Redeman had not the mental capacity to make a will, and in making the paper which she did make and which purports to be her last will she was unduly influenced by Carl Mann to give a very large part of her property to the three sons without making suitable provisions for her three daughters, and that but for the influence of Carl Mann the will would not have been made, or if made at all, would have divided the property of testatrix equally among her six children. In support of this they point to the first will made in 1917, and after the death of her husband, and they say that at that time the testatrix was of sound mind and free from undue influence.

Contestants prove by the three daughters and by some other persons that testatrix lived in dread of the Jewman, meaning Carl Mann, and that she was much afraid of him lest he would force her to do something against her will or something which otherwise she would not do; that he frequently came to her house and talked with her and often attended to her business, but that she owed him money and she was afraid to discharge him lest he would close in on her and require payment of the money advanced by him. They also say the testatrix was of feeble mind; that she was suffering from a number of ulcers on her legs which had been there for some years and had developed to such a stage that they had cooped and were eating in towards the bone; that this rendered testatrix unable to walk about or to take care of herself; that three or four months before her death she developed an acute case of Bright's disease which affected her mind, and that she was greatly worried and frightened by the ''Jewman.''

On the other hand the evidence shows beyond question that the Jewman had done more for testatrix and

her family than any person living. He was very solicitous for their well-being. Whenever they needed money he provided it. He paid their bills when they could not pay them; he visited them in sickness and helped them in many ways; in their business transactions his advice and counsel were sought and found to be of great help. There is no evidence in the record to show that Carl Mann ever influenced or attempted to influence the testatrix in making her will except when he stepped in and asked the testatrix to give the daughters fifty dollars each instead of five, and of this contestants cannot complain, or of the other instance which they cited that Carl Mann suggested the name of the executor of the will and that Mrs. Redeman consented to this and appointed Mr. Doolan. The record shows that Mr. Doolan has performed the duties of executor in a most commendable way and has not sought to nor has he taken advantage of anyone connected with the will or the estate. In fact, neither Mrs. Redeman nor Mr. Mann knew that an executor was necessary until Mr. Doolan advised them after he had started to draw the will. There being no person present suitable for that purpose Mr. Doolan was named and he accepted, believing that the estate was so small as to occasion very little work on his part. So neither of these suggestions was to the disadvantage of contestants, but on the contrary were greatly to their advantage. Fortunately after the will of testatrix was made Mr. Doolan, the executor, negotiated a good sale of the little farm to the United States government to be used in connection with the military camp nearby. The sum realized from the place in this way about $7,000.00, was the first amount asked by Mr. Doolan for the property and was much in excess of its real value. This no doubt precipitated this contest, for up to the time of this sale there was no talk, so far as contestants were concerned, of the contest of the will. Carl Mann obtained nothing whatever under the will and he had not and could not have had, according to the evidence, any special reason for desiring testatrix to give the boys all the property to the exclusion of the daughters. In his testimony given before the daughters testified, he speaks in the very highest terms of each of the daughters and says they were unusually good to their mother; that they came home to wait upon her and dress her and clean up her house; that he had never seen more dutiful daughters and that they deserved much more

than they got under the will. It is plain, therefore, that Carl Mann bore no unfriendly feeling toward either of the daughters to their husbands, but it was his opinion, as expressed in the evidence, that the father of these children bore animosity toward his sons-in-law without good grounds therefor.

The evidence as a whole upon the mental incapacity of the testatrix is hardly sufficient to be considered at all. Those persons who were most intimately associated with her, including her family physician, testified unequivocally that her mind was sufficient to know the objects of her bounty, her duty to them and to dispose of her property according to a fixed plan of her own.

The second ground of contestants is fully as weak as the first when one considers all the evidence. We are not authorized to presume that a will was made under influence of another unless there be some substantial evidence tending to support this view. There is no claim that the sons influenced the testatrix in any way to give them the property, but the whole basis of the claim that undue influence was exerted upon testatrix is builded around Carl Mann and his conduct, but as he received no benefit under this will and is not shown to have advised the testatrix in any way concerning the will except at the time Mr. Doolan was present and writing the will, and then gave advice to the advantage of the contestants, it is very hard indeed to see how he could have unduly influenced her in the making of her will. The solemn paper itself, executed by the testatrix shortly before her death and at a time when she realized what she was doing and appreciated her duty to her children, is not to be overcome by mere shadows of proof or by slight proof. Such papers should be sustained in every instance where the testatrix had mind sufficient to know the objects of her bounty and her duty to them and to dispose of her property according to a fixed purpose of her own. The evidence contained in the record was not sufficient to sustain the verdict finding the paper not to be the last will and testament of Francis Redeman. The verdict in fact is flagrantly against the weight of the evidence, and for these reasons the judgment must be reversed.

Judgment reversed for proceedings consistent with this opinion.