## Young's Executor, et al. v. Toliver's Administrator.

### (Decided May 4, 1926.)

### Appeal from Jefferson Circuit Court . (Common Pleas, Fourth Division).

1. Wills.—Evidence held to show that signature to will was that of testatrix.
2. Evidence.—Nonexpert's testimony as to testatrix's mental capacity is admissible only when supported by recital of facts on which based.
3. Evidence—Nonexpert's Opinion, Unsupported by Recital of Facts Warranting it, is Insufficient to Overcome Presumption in Favor of Regularly Executed Will Rational on Face.—Opinion of non-expert witnesses, unsupported by recital of facts warranting it, is insufficient to overcome presumption in favor of testamentary paper regularly executed and rational on its face.
4. Wills.—Verdict for will contestant on ground of testatrix's mental incapacity held flagrantly against weight of evidence.

GIFFORD & STEINFELD for appellants.

J. J. KAVANAUGH for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

A writing purporting to be the last will and testament of Susan M. Young, a colored woman, of Louisville, who died on the 17th day of May, 1923, is the subject of

this controversy. It was admitted to probate by the Jefferson county court, and the Louisville Trust Company named as executor, duly qualified as such and undertook the discharge of its duties. The testatrix left no kin save Julia Toliver, an old colored woman, a cousin, who has departed this life since the first trial of this case. The estate consisted of a small house and lot in Louisville worth about $1,000.00 and about $1,200.00 in money and personal property. Excluding the preamble the will reads:

"(1) In this my last will and testament, I hereby direct my executor, hereinbefore named, to pay all of my funeral expenses and just debts.

"(2) In this my last will and testament. I hereby devise and bequeath to Gladys Evans, for whom I have acted as god-mother, the sum of fifty (45) dollars.

"(3) I hereby devise and bequeath to Richmond W . Jones, Jr., the sum of fifty ($50) dollars.

"(4) I hereby devise, bequeath and give to Julia Toliver the sum of twenty-five ($25) dollars.

"(5) I hereby devise, bequeath and give to Minnie Miller the sum of ten ($10) dollars.

"(6) In this my last will and testament I hereby devise, bequeath and give unto Mary E. Merritt, my good friend, all the rest and residue of my estate, both real, personal and mixed, the same being for her own use and benefit, free from the control of *my* husband she may have at the time of my demise or that she may thereafter, I make this bequest to my dear friend Mary E. Merritt, because of the many kind acts and deeds that she has done for me and of the continued interest and care for me during my lifetime. I do not believe that this little bequest I am making to her will in any way pay her for the services rendered, and I trust that she will accept it in the manner in which it is given.

"(7) In this my last will and testament, I hereby name, constitute and appoint the Louisville Trust Company executor of my will, and ask the court that said trust company be allowed to qualify and act without any other bond excepting their capital stock."

It was prepared by a colored lawyer named W. R. Wright, of Louisville, and was witnessed by him and his

stenographer, Kathryne Wise. It was contested upon the grounds (1) that the testatrix was without testamentary capacity, (2) was unduly influenced, and (3) the paper purporting to be the will was not signed by the alleged testatrix but was a forgery. The court by its instructions only submitted to the jury the question of testamentary capacity but appellee does not complain of the ruling of the court in this regard.

The testatrix was about seventy (70) years of age at the time of the making of the will and had been a widow about two months, her husband, John Young, having committed suicide by cutting his throat. He was an old Union soldier and had been drawing a pension and saving some of the money which he kept in a safety box at the bank. He gave by will all of his property to his wife, the testatrix. Up to the time of the death of John Young, the husband of the testatrix, it is admitted that the testatrix was of sound mind. From the evidence it would appear that she was above the average in intelligence among women of her race. Some of the witnesses say that she was very active in church and social affairs, and was president of one or more societies among her people. She had a great number of friends and neighbors where she lived and most of them have testified on one side or the other of this case. For the contestant there were about a dozen witnesses, all laymen, who said in substance that they were acquainted with Susan Young in her lifetime and had observed her conduct and listened to her conversation along about the time of the making of the will, and were of the opinion that she did not have mental capacity sufficient to know her property, appreciate the duties she owed to her relatives, know the objects of her bounty and dispose of her property according to a fixed purpose of her own. Some of them gave little or no reason for the opinion expressed in their evidence, but some of them testified that the testatrix was an old lady at the time her husband committed suicide and that she immediately rushed to the scene and beheld her husband with his throat cut and bleeding and that this sight so upset her and preyed upon her mind that she became very nervous and to some extent, if not entirely, unbalanced in mind; that after the death of her husband she was changed from what she was before and often exclaimed, "Oh, if I could forget the scene;" that on other occasions she said, "Take me to my mother," although her mother had been dead many years; and

again would speak of her husband as though he were alive; that she was feeble in health, having undergone four major surgical operations, before the death of her husband. One or more witnesses stated that her memory was poor and that she would enter a store and propose to buy an article and then change her mind.

For the propounders of the will it was proven by Wright, the lawyer who prepared the instrument, that he had never met or known the testatrix until she came to his office to have the will prepared and that he invited her into the private office where they were seated and the testatrix without aid or suggestion from anyone told him in detail how she wanted to dispose of her property, of what her property consisted and to whom she wanted it to go, and that he wrote the will exactly as she directed it written; that testatrix talked like a woman of sound mind and that he obseerved nothing in her conversation or conduct that indicated that she was not of sound mind. Two physicians who were acquainted with the testatrix testified that they had known her for some years; one of them lived close to her and the other had attended her in sickness, and each gave it as his professional opinion that testatrix was of sound mind at the time of the making of the will, and one of them said she was of sound mind up to within forty-eight (48) hours of her death; that she was a sensible old lady, and knew the extent of her property, the objects of her bounty, and possessed mind and will power enough to dispose of her property according to a fixed purpose of her own. Her most intimate associates through the latter part of her life were called as witnesses by the propounders and stated that the testatrix always appeared to be of sound mind; that they never heard of her being out of her mind until after her death; that she was regarded as a sensible, sane person by all of her associates. Some twenty-five witnesses gave testimony of this general tenor, and all professed to be intimate friends of the testatrix.

No evidence tending to show that the signature to the will was not genuine was introduced save one or two persons who looked at the handwriting and stated they had seen her writting though they had not seen her write, and that in their opinion the signature was not hers, but the signature was proven to be genuine by the two attesting witnesses and by several bankers and other persons who were expert in the identification of handwritings and who compared the signature on the testamentary

paper with her admittedly genuine signature on about thirty checks introduced in evidence, and upon signature cards filed with the bank with which she did business. The evidence upon that point overwhelmingly sustained the claim of the propounders that the signature was genuine. Nor was there any evidence of consequence, if indeed there was any at all, tending to prove that the testatrix was unduly influenced in the execution of the will. This question was not submitted to the jury.

Reading and considering all of the evidence together we are constrained to the opinion that the verdict of the jury was flagrantly against the weight of the evidence. The rule is well established that the testimony of nonexpert witnesses as to the mental capacity of a testatrix is admissible only when it is supported by a recitation of the facts upon which it is based. But the opinion of nonexpert witnesses alone, unsupported by the recitation of facts which warrant the opinion, is not sufficient to overcome the presumption in favor of a testamentary paper which is regularly executed and rational upon its face. In Wood v. Corcoran, 190 Ky. 623, it was held that "where a will was rational and equitable upon its face the burden was upon the contestants to establish the ground of contest, including that of mental incapacity, and such burden was not discharged by the introduction of evidence wanting in substance and relevant consequence, and which consisted only in vague, uncertain or irrelevant matter not carrying the quality of proof nor having fitness to induce conviction, and further that the opinions, as to the mental capacity of the testator, of nonexpert witnesses alone in the absence of facts supporting such opinions would not authorize a submission of that issue to the jury, nor would facts of the nonprobative nature, above indicated and upon which the opinions of the nonexpert witnesses were based, authorize such submission." Cecil v. Anhier, 176 Ky. 198; Schrodt v. Schrodt, 181 Ky. 174; Bailey v. Bailey, 184 Ky. 455; Trustees of Epworth Methodist Church v. Overman, 185 Ky. 773. In the Wood-Corcoran, Admr., case, *supra,* it was said: "This court has in recent years, approached towards the conclusion (not yet adopted) that there is no logical reason for submitting a case to the jury, under the doctrine of the scintilla rule when a verdict, supported only by a scintilla of evidence, would be set aside as flagrantly against the testimony." Crump

v. Chenault, 154 Ky. 187; Poll v. Patterson, 178 Ky. 22; Langford v. Miles, 189 Ky. 515; Hildreth v. Hildreth, 153 Ky. 601.

For contestants there was no physician or other expert witness, but there were two physicians who testified for the propounders, strongly supporting the will. Then, too, the most intimate associates of the testatrix for the years next before her death nearly all testified for the propounders. The witnesses testifying for the contestants were not nearly so intimately associated with the testatrix as those testifying for the propounders. All these facts taken together, constrain us to hold that the verdict is contrary to and flagrantly against the weight of the evidence. If upon another trial the evidence is in substance the same as upon the last trial, the court will direct the jury to find and return a verdict for the propounders.

Appellant insists that after the death of the contestant the action was attempted to be revived in the name of her administrator instead of in the name of the heirs of the contestant, for which reason the appeal should be dismissed. One text says:

"The weight of authority seems to incline to the view that the right to contest a will does not pass to the executors or administrators of one having that right, for the reason that a person to be interested must have that interest at the time of the commencement of an action to contest the will." 28 Ruling Case Law, page 389.

That question, however, was waived by appellant and is not now before the court. After the death of the contestant, between the first and second trials, appellee by counsel tendered an order of revival in the name of the administrator of the contestant, which order was concurred in by appellant and its counsel, as they say supposing it to be correct, not having examined the law on the subject. This order was entered by the court without objection from attorneys for appellants, and it is now too late to question the administrator's right to prosecute this appeal.

Judgment reversed for proceedings consistent with this opinion.