## Davidson's Executor, et al. v. Melton, et al.

(Decided February 14, 1928.)

## Appeal from Cumberland Circuit Court.

1. Wills.—Where only evidence of testamentary incapacity, in will contest, was testimony of nonexpert witnesses, unsupported by sufficient facts on which to base their opinions, submission of issue to jury was not warranted.

2. Wills.—Mere general or reasonable influence over testator, or proof of opportunity to exercise undue influence, or a showing that there was a possibility that undue influence was exercised, is insufficient proof of the fact of undue influence.

3. Wills.—In will contest, evidence of undue influence held insufficient to justify submitting that issue to the jury.

C. R. HICKS and W. E. MILLER, guardian ad litem, for appellants.

TANNER OTTLEY for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

B. M. Davidson died a resident of Cumberland county, leaving a will, which was duly probated in the county court after his death. An appeal was taken to the circuit court. On the trial of the case the circuit court submitted the case to the jury on both want of capacity and undue influence. The jury returned this verdict: "We, the jury, find against the will on account of undue influence." The court entered judgment upon the verdict. The propounders appeal.

The facts are these: B. M. Davidson was about 70 years old. He owned a farm on which he had lived for many years, worth about $5,000. One witness says he had $100 worth of personal property, another $400. He had been married three times. By his first wife he had six children living, all of age though not all married. By his second wife he had two children, 12 and 8 years of age. By his third wife he had five children, the last born about the time he died. He made his will on February 2, 1925. He gave to each of his six children by his first wife sums ranging from $5 to $50. To his wife he bequeathed a home and living out of the proceeds of his farm as long as she remained his lawful widow, and to the rest of his children, that is, the children by his last two wives, he bequeathed all the rest of his property, the

land to remain in trust for his last two wives' children until they became 21 years of age and then to be equally divided among them. On February 28 he made a codicil to the will by which he recited that, realizing that it was necessary to provide further for the expenses of his sickness, burial, etc., he authorized his executor to sell and convey, if necessary, about 18 acres on the north end of his farm to pay these expenses and his just debts. The facts attending the execution of the will are these: Davidson had been sick for some weeks with what he called an attack of flu. On the morning of February 2, he sent his two little girls to L. H. Rush's house to ask Rush to come down to see him. Rush was the postmaster and also a neighbor. He came down to see Davidson, and when he got there Davidson told him that he wanted to make his will and wanted Rush to write it; that his children by his first wife were all grown and that he wished to provide for the little children in his home. Rush wrote the will as he directed. Davidson then sent for another neighbor, D. W. Wells, to come in to be a witness to the will. After Wells came he talked over the will with Rush and Wells, and it was then signed by all three of them. They testify that, though he was sick, he was thoroughly at himself when this occurred. The next day he went up to Rush's store. Rush saw he was not well enough to be out and told him he ought to go home, but saw nothing wrong with his mind; he was thoroughly himself. He went home and did not leave home any more. On February 28, he again sent for Rush and had him to write the codicil, which was then signed by Rush and another neighbor, C. O. McDonald. They testify he was entirely himself when this was done.

The only witnesses testifying to incapacity were his daughter Kate Melton, his son J. A. Davidson, and Frank Wells. Mrs. Melton says he said one day that he had not had anything to take but salt water since he had been sick; that was about all he said. J. A. Davidson says he brought him one day a jar of pickles, and he said there are no pickles in the jar, nothing but a handful of salt. Wells said he saw him one day at the store; that he came to get some aspirin tablets; he seemed to be suffering a good deal, and he got some little tricks and started home. The witness added this: ''I expect his mind wasn't very good.''

On the other hand, the propounders proved by a number of people that he was a man of strong character

and good mind and that his mind was not affected by his sickness. The jury could not reasonably have found otherwise than they did under the evidence as to testamentary capacity. In fact contestants' witnesses were not experts. Their testimony as to their conclusions is worth little unless based on sufficient facts. The talk about salt simply showed perhaps that his stomach was out of order. Sick people often use like expressions. Nothing like this occurred the day the will was written. In Young v. Toliver, 214 Ky. 773, 284 S. W. 389, 391, this court thus stated the rule:

"The rule is well established that the testimony of nonexpert witnesses as to the mental capacity of a testatrix is admissible only when it is supported by a recitation of the facts upon which it is based. But the opinion of nonexpert witnesses alone, unsupported by the recitation of facts which warrant the opinion, is not sufficient to overcome the presumption in favor of a testamentary paper which is regularly executed and rational upon its face."

A number of cases are collected in that opinion to the effect that where a will is rational and equitable upon its face the burden of showing incapacity is not discharged by the introduction of opinions of nonexpert witnesses in the absence of facts supporting such opinions.

The only evidence of undue influence furnished by the testimony is that of Kate Melton and J. A. Davidson, who were contesting the will. The only facts they stated to show that the third wife had undue influence over her husband occurred about eight years before the will was made and before they were married. This was entirely too remote. There was absolutely no evidence that Mrs. Davidson had anything to do with the making of the will. In fact, she receives less under the will than the law would have given her. If the testator had $400 in personal property still, all of this would have been exempt from distribution. As to what evidence is sufficient to show undue influence in a will case, this court, in Childers v. Cartwright, 136 Ky. 506, 124 S. W. 802, 804, thus stated the rule:

"It is not sufficient that it be shown that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised; some evidence must be adduced showing that such influence was exercised."

In Bailey v. Bailey, 184 Ky. 458, 212 S. W. 596, the court, approving the above, added this:

"Mere general or reasonable influence over the testatrix is not sufficient to invalidate a will; to have this effect the influence must be undue, that is, not right or not proper. Acts of kindness, attention, advice, suggestions or appeals to the feelings, or understanding, not destroying free agency must not be mistaken for undue influence."

In Hildreth v. Hildreth, 153 Ky. 603, 156 S. W. 144, 146, on facts fully as strong as those here, the court, concluding its opinion, said:

"To permit the verdict to stand in this case would be to allow the jury to dispose of the testator's property in a manner that would not accord with his intentions, which he was clearly competent to express as shown by the instrument itself."

On all the evidence the court concludes that the verdict is palpably unsupported by the evidence, and that there was not sufficient evidence of either want of capacity or undue influence to warrant the submission of either issue to the jury; and if on another trial the evidence is the same, the court will instruct the jury peremptorily to find for the will.

Judgment reversed, and cause remanded for a new trial consistent herewith.