## Doyle et al. v. Schafer.

(Decided February 19, 1929.)

· J. L. RICHARDSON, FRED FORCHT and MERIT O'NEAL for appellants.

W. W. DOWNING and WM. F. CLARKE, JR. for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Jane P. Burford, whose purported last will and testament is attacked by her mother, Melissa Schafer, died in Jefferson county on April 25, 1927. By the provisions of her will she left all of her property, after the payment of debts and funeral expenses, to her friend, William A. Doyle. The will provided that Doyle should be the executor of the estate, but the appointment apparently was not confirmed by the court, and the Liberty Insurance Bank was appointed administrator of her estate with the will annexed. The estate was of the value of about $8,000.

Mrs. Schafer, the mother, who is the appellee, resided in Indiana at the time of the death of her daughter, Mrs. Burford. She was very old, being above 82 years of age, and had borne and reared 13 children. She was blind, or substantially so, and she had an income from the government provided through war risk insurance issued on the life of one of her sons who was killed in the late war. The appellant William A. Doyle was a constable in the city of Louisville, and for some time he had roomed at the home of Mrs. Burford. His wife resided in an-

other part of the city, but there is no evidence in this record showing any improper intimacy between Mrs. Burford and the beneficiary, Mr. Doyle. His wife resided outside his magisterial district, and he thought it was necessary for him to retain a residence within the district. Mrs. Burford had resided in another part of the city during the life of her husband, but she thereafter sold the property where she then resided and purchased the property where she resided at her death. Doyle testified that he paid $1,500 of the purchase money on her home, and that he had paid other expenses before her death as well as the funeral expenses after her death.

The condition of Mrs. Schafer, the appellee, and the conduct of Mr. Doyle are made to appear in the record, but neither has anything to do with the question of the testamentary capacity of Mrs. Burford at the time she made her will. The sole question presented by this record on the merits is whether, at the time of the execution of the paper found by the jury not to be the last will and testament of Mrs. Burford, she had the mental capacity required by law as a prerequisite to her execution of the paper. The jury heard the evidence and the instructions of the court, and found a verdict against the will.

The first question urged by cousel for appellant as a ground of reversal is that the appellee, Mrs. Schafer, did not authorize the institution of the suit having for its object the setting aside of the purported will, or, rather, that the appellee knew nothing about the contest, cared nothing about it, and did not authorize it. Appellant argues that a peremptory instruction should have been given to the jury directing it to return a verdict in favor of him because of the lack of authority for the prosecution of the proceedings. It is true that Mrs. Schafer testified that she did not know about the contest proceeding and did not know who was responsible for its institution. She was very old and infirm, and a reading of the entire transcript of her evidence convinces the court that she knew what was intended by the proceedings, but did not understand the technical names for some of the steps mentioned in her examination. One is left under the impression that she thought her children were looking after the matter for her, and that she had little or nothing to do with it, when the fact is that she was the sole beneficiary in the event it should be found that the

paper was not the last will of Mrs. Burford. It is also shown by the evidence that she executed a power of attorney to one of her sons, authorizing him to employ counsel to institute the contest proceedings, and that she thereafter withdrew that power of attorney and executed another substituting her daughter in place of her son and fully authorizing her to employ counsel. A copy of the power of attorney so executed is placed in the record. The appellant is grasping at a straw when he urges that the proceedings should have been dismissed because the appellee did not authorize its institution. There is nothing in that contention.

The second ground urged by appellant as a reason why the trial court should have sustained his motion for a directed verdict in his favor is that the evidence was not sufficient to warrant the court in submitting the issues to the jury for its determination. Appellant relies on the cases of Wigginton's Executor et al. v. Wigginton et al., 194 Ky. 385, 239 S. W. 455; Broyles et al. v. Able. Jr., Administrator, 208 Ky. 672, 271 S. W. 1040; Cecil's Executors et al. v. Anheir et al., 176 Ky. 198, 195 S. W. 837; Redeman et al. v. Ruff et al., 196 Ky. 471, 244 S. W. 910; Young's Executor et al. v. Toliver's Administrator, 214 Ky. 769, 284 S. W. 389; Bush v. Lisle, 89 Ky. 393. 12 S. W. 762, 11 Ky. Law Rep. 708; Franzman's Executors v. Nalty et al., 208 Ky. 686, 271 S. W. 1034; Humphrey et al. v. Neal et al., 199 Ky. 498, 251 S. W. 637; Wood v. Corcoran, Adm'r, etc., 190 Ky. 621, 228 S. W. 32; Standard Accident Insurance Co. v. Strunk, 220 Ky. 256, 294 S. W. 1085. These cases are enlightening on the question of the sufficiency of evidence to justify a trial court in submitting the question of mental capacity to a jury.

The court finds no fault with the principles announced in these cases, but there is one thing which must never be forgotten, and that is that no two people are exactly alike, and the minds of no two people are exactly similar, and it may be that the circumstances and facts surrounding the execution of a paper purporting to be a will could be exactly the same, but we doubt if there has ever been two cases exactly alike in this respect. This means that every will contest must be decided from the facts and circumstances in the particular case measured by the rules announced by the courts in so far as the evidence can be made to come under announced rules.

An examination of the evidence in the case now before us is necessary, and the examination need not be pursued very far before arriving at the conclusion that none of the cases relied on by appellant are in a class with this case. Many neighbors and friends of Mrs. Burford were introduced as witnesses in behalf of appellee. It is urged that they were nonexpert and that their evidence was not competent. There seems to be a misunderstanding on the part of counsel for appellant about the rules governing the admission of evidence of such witnesses. Neighbors and friends may not be allowed to testify as experts. They cannot answer questions based upon facts not personally known to them. They cannot speculate about the mental soundness of a person because of what others have said about such person. They may, however, testify to what they know through actual observation and what they have ascertained through personal contact and dealings with the person whose mental soundness is questioned. From the facts which they know they may express an opinion as to whether a particular person was of sound mind, and such evidence is competent and may be considered by a jury engaged in the task of reaching a conclusion as to whether a particular person had sufficient mental capacity to know the natural objects of his bounty, his duty to them, and to dispose of his property according to a fixed purpose of his own.

The appellee did not rest her case solely on the testimony of nonexpert witnesses. Three doctors of high standing in their profession testified for her, and either stated directly that Mrs. Burford at the time she executed the will was mentally incompetent to do so, or stated facts from which a jury might infer that she was not competent to understand the nature of what she was doing at the time she signed the purported will. Dr. John D. Allen made a blood test, and discovered that Mrs. Burford was syphilitic. The Wasserman test used by him showed a four plus positive, which, according to his testimony, was conclusive that she was seriously suffering from syphilis. This test was made in May prior to her death on April 25, 1927. Dr. Carl Weidner, Jr., gave testimony to the effect that he had treated Mrs. Burford from July, 1926, until January, 1927. He stated that she had a halting gait; that she suffered with a pain in her abdomen, for which hypodermics were administered; that she had a stupid appearance, contracted pu-

pils, and a vacant stare; that her memory was poor; and that her speech was peculiar and jerky. It was his opinion from his observation of her that she was suffering from syphilis. He examined her last in January, 1927, and at that time she had a tendency to fall forward and walk on her toes, as well as exaggerated reflexes and disturbed speech, which indicated to his mind that the disease of her organic central nervous condition was progressive in its nature. He caused a blood test to be made in August, 1926, but the result of the test was not admitted in evidence, because Dr. Stuart Graves, who made the test, did not testify to the correctness of his report. Dr. Weidner further testified that it is frequent that syphilis affects the mind, and he gave it as his opinion that Mrs. Burford did not have testamentary capacity at the time the purported will was executed. According to the medical testimony, Mrs. Burford had a severe infection, and paresis is one of the consequences of such a serious syphilitic infection. Dr. Simrall Anderson also testified for appellee, and expressed the opinion that Mrs. Burford was not possessed of testamentary capacity at the time the purported will was written. He saw her near the time when the will was written. At that time she had a tumor of the bladder; she was sluggish in speech, slow in mentality, and did not readily answer the questions which he asked her. He fully corroborated the testimony of Dr. Weidner.

Leaving the medical testimony, and turning to the testimony given by the relatives, neighbors, and friends, we find many things tending to show that Mrs. Burford did not have testamentary capacity at the time she executed the will. She was subject to fits of violent temper; she had received an injury when she was a small girl, and thereafter she was subject to spells; she did not know her relatives about the time the paper was prepared; her tongue and lips appeared to be immobile on the very day that the purported will was signed by her; she talked, when she talked at all, in a "quivery" voice, and she said that Dr. Weidner "had took a pint of blood" from her to make a test, and had charged her $5 for it, and thereafter refused to return any of the blood. One of her brothers visited her on the 14th of April with the object in view of taking her to his home, but on the morning of the 15th he testified that she was, in effect, unconscious, and did not know anything. To put it in his lan-

guage, he said "she was clean off." One of her friends visited her a few months prior to her death, a woman grown, and she said to her that she thought she was a little girl, although she had known her for years, and the woman at the time was married. Mrs. Burford told this witness that she felt that she was going crazy, and she made the same statement to others. Another one of the neighbors testified that Mrs. Burford was known in the neighborhood as "the little crazy lady."

The neighbors testified that she had a penchant for breaking dishes, and that they had seen her break them up and throw them out of her window, and on other occasions they had seen her take them out in the yard, place them in a washtub, and break them into small bits. At times she carried her furniture out of her house, and at other times, almost wholly unclad, when snow and ice covered the ground, barefooted, they saw her go out into the yard often and hang clothes on a line. Some of them saw her take a small dog and beat it against the side of her house. Many of them testified that she raved and swore like a trooper. Sometimes she broke out the window panes in her home. On one occasion she broke out a window with an ax from the outside, and, when one of the neighbors asked her why she did so, she replied that she had to break the window to get in, and, when she was asked where she got the ax, she stated that she went inside the kitchen and got it. On another occasion she told one of the neighbors that she had lost a piece of jewelry, and that she prayed to God to help her find it, telling Him in her prayer that she wanted it because of its sentimental value. She afterwards found it, and she stated to a neighbor that she fooled God and did not deal exactly fair with Him about it, because she really wanted the jewelry returned because of its money value and not because of any sentimental value attached to it. These are some of the things that were testified to by the witnesses in behalf of the appellee.

It is true that appellant offered one witness at least who was a medical practioner of high standing who knew Mrs. Burford and who stated that she had testamentary capacity. Lawyers and other professional men were introduced who knew her and who had come in contact with her in a business way, and they stated that she was mentally sound. Clem Huggins, who wrote the will, testified that she was undoubtedly of sound mind at the time it was executed.

The question is not what this court may have done in the case had it been sitting as a jury, but the question is whether there was enough evidence to make an issue requiring the trial court to submit the case to the jury. There was an abundance of evidence not only to justify the submission of the case to the jury, but to uphold its verdict as well.

Another ground urged by appellant is that the court erred in excluding certain testimony of the beneficiary, William A. Doyle. We may pass this ground without consideration, as there are no avowals in the record showing what the answers of Mr. Doyle would have been if he had been allowed to answer any of the questions. The question of the competency of the evidence of a beneficiary in a will contest was fully discussed in the late case of Russell et al. v. Tyler et al., 224 Ky. 511, 6 S. W. (2d) 707. It was there held that, in view of the decisions of this court in the past, a beneficiary might testify as to the mental condition of the testator and the facts upon which he bases his opinion, as well as upon issues of undue influence, but we think that the opinion goes no further than that.

Perceiving no error in the record, the court has reached the conclusion that the judgment should be affirmed.

Judgment affirmed.